290 A.2d 912.

CAROLE ANN HEATHERTON *vs.* JAMES THOMAS
HEATHERTON.

MAY 22, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This proceeding was brought by the husband
in a divorce action to modify the terms of a final divorce
decree which awarded the custody of the minor children
of the parties to their mother and directed him as their
father to make weekly support payments of $45. After a
hearing in the Family Court a decree was entered reducing

the weekly support payments to $35, and from that decree the mother has appealed to this court.

At the Family Court hearing the father and the mother were the only witnesses. No extensive summary of their testimony is required. The father testified as to his current earnings and expenses and referred rather vaguely to what those items had been in April of 1970 when the final decree was entered; the mother testified only with respect to the children's current needs. There was no testimony whatsoever indicating that either the children's needs or their father's ability to provide for those needs had in any significant way changed since the entry of the final divorce decree.

On such a record the law left but one avenue open to the trial justice: to deny relief. The long-standing rule which prevails both here and generally elsewhere provides that the rights of the parties are settled by the existing decree and cannot be altered unless the moving party by a fair preponderance of the evidence shows that subsequent to the entry of that decree a change of circumstances or conditions occurred.[1]

---

[1] A listing of some of our own cases so holding includes: *Rock* v. *Rock*, 107 R. I. 172, 265 A.2d 640 (1970); *Ferrazza* v. *Ferrazza*, 102 R. I. 265, 229 A.2d 773 (1967); *Robinson* v. *Robinson*, 99 R. I. 425, 208 A.2d 390 (1965); *Gordon* v. *Gordon*, 95 R. I. 299, 186 A.2d 732 (1962); *Spaziano* v. *Spaziano*, 94 R. I. 258, 179 A.2d 849 (1962); *Ricciardi* v. *Ricciardi*, 91 R. I. 455, 164 A.2d 855 (1960); *Getek* v. *Getek*, 81 R. I. 493, 104 A.2d 750 (1954); *Ciallella* v. *Ciallella*, 81 R. I. 320, 103 A.2d 77 (1954); *Hudson* v. *Hudson*, 80 R. I. 473, 98 A.2d 360 (1953); *Reynolds* v. *Reynolds*, 79 R. I. 163, 85 A.2d 565 (1952); *Parenti* v. *Parenti*, 71 R. I. 18, 41 A.2d 313 (1945); *Moore* v. *Moore*, 53 R. I. 294, 166 A. 501 (1933).

As to the law elsewhere, 2A Nelson, *Divorce and Annulment* §17.07 at 49 (2d ed. rev. 1961) says:

"The original decree fixing alimony or support money is an adjudication of the court as to what is right and proper at the time it is made. To obtain any change in it, a change in the circumstances of the parties must be shown making a continuance of the original provisions improper and unfair."

Specifically, in a case such as the one before us, the rule demands as an indispensable precedent to any modification of a support order that the father show that since the prior decree there has been either an abatement of the needs of his children or an impairment of his own financial ability to provide for those needs. Any modification resulting from such a showing must be based upon relating the children's then current needs and welfare to the father's then demonstrated ability to provide for those needs and that welfare. *Robinson* v. *Robinson*, 99 R. I. 425, 208 A.2d 390 (1965); *Spaziano* v. *Spaziano*, 94 R. I. 258, 179 A.2d 849 (1962).

The considerations justifying these rules are at least akin to, if not substantially the same as, those underlying the principle of res judicata. *Biedron* v. *Biedron*, 128 Ind. App. 299, 148 N.E.2d 209 (1958); *Morris* v. *Morris*, 137 Neb. 660, 290 N.W. 720 (1940); 2A Nelson, *Divorce and Annulment* §17.07 at 52 (2d ed. rev. 1961). They include such familiar rationales as the desirability of bringing litigation to an end, the reluctance to call upon a court to adjudicate twice upon the same set of facts and the unfairness associated with requiring an adversary to be twice vexed for the same cause of action.

In commenting upon this area of the law of domestic relations, Nelson says that a court which has once ruled upon a controversy "* * * cannot be taken over by a particular set of litigants, to the detriment of others, for the continued readjudication and reconsideration of their affairs." In his judgment further consideration is warranted only for "good cause," that to show such cause calls for "the presentation of something new and different," and as a matter of "public policy," requires "a showing that the circumstances theretofore presented to the court have changed." Nelson, *supra*, §17.07 at 53.

In this case the trial justice, instead of following estab-

lished principles, proceeded on a course of his own choosing. Even though the record failed to disclose any change either in the father's financial capabilities or the children's needs, the trial justice reduced the father's support obligations. In his judgment, the father was financially incapable of meeting his obligations under the existing decree.[2] He took this action even though its effect was to fault the unappealed judgment of another Family Court justice who, a little less than a year previously and on what apparently were the same circumstances and conditions as now prevail, fixed $45 a week as the fair and proper amount for the father to pay for his children's support.

Moreover, and more importantly, the trial justice, in deciding as he did, deliberately disregarded the rules of law which this court has announced should control in determining whether or not a support order should be modified.[3]

---

[2]After finding that respondent's income and expenses were about the same as when the original decree was entered, the trial justice said:

"I don't see how this man can pay $45 a week. It's impossible for him to do it. And I don't think that this Court should be in a position to insist that this order remain in effect so that this man walks out the door and he immediately is in contempt; I don't think that's what this Court is set up for."

[3]In his decision the Family Court justice, referring to *D'Arezzo, infra,* stated:

"* * * I made an order and found that it was impossible for a man to make the support payments, and the Supreme Court, in its wisdom, said that I was wrong and said that * * * the rule was that * * * there has to be a change in circumstances since the entry of the decree complained of. I still don't believe that's the law, even though they say it is. Well, let me put it this way: I don't believe that should be the law. Whether it is or not, is something else. I believe that this Court is a court which follows the rules of equity, and if it is apparent to the trial justice that it's impossible for this man or any man to live in a reasonable manner and still comply with the terms of the decree, then I think it's incumbent upon this Court to follow the rules of equity to make an adjustment. * * * Theoretically, the Supreme Court is right. Practically, I still believe that I was right then and I believe that I'm right now. And running the risk of having the Supreme Court

We are, therefore, constrained to observe, as we did only recently in *D'Arezzo* v. *D'Arezzo*, 107 R. I. 422, 267 A.2d 683 (1970), that decisions of this court should be followed by all inferior tribunals and that judges of those tribunals are under a solemn obligation to follow and to apply the rules of law announced by this court irrespective of their own personal views of the wisdom or soundness of those rules. Faced with a situation where the judicial precedent is contrary to his own view on what the correct rule of law should be, the trial judge, instead of striking out on a tangent of his own, should follow the law as announced by the appellate tribunal and state in an accompanying opinion his reservations about its soundness. Then, the entry of a judgment incorporating the existing rule of law will preserve

> "that 'priority and place'[4] which Shakespeare reminded us were indispensable to justice. Moreover, the reservation in the opinion [will promote] the growth of the law in the court where it most counts. For if the criticism of the precedent be just, the appellate court will set matters straight, and any trial judge worthy of his salt will feel complimented in being reversed on a ground he himself suggested. No trial judge of any sense supposes his quality is measured by a naked tabulation of affirmances and reversals." Charles E. Wyzanski, Jr., *A Trial Judge's Freedom and Responsibility*, 65 Harv. L. Rev. 1281, 1299 (1952).

Strict compliance with this procedure will encourage a healthy growth of the law without endangering its stability. *East Providence* v. *Shell Oil Co.*, 110 R. I. 138, 290 A.2d 915 (1972); *D'Arezzo* v. *D'Arezzo, supra.*

---

overrule me once more, I'm going to find that in this particular case, that this man cannot pay the sum of $45 weekly for support of these minor children."

[4]The author here refers his readers to Shakespeare, *Troilus and Cressida*, Act 1, Scene 3, Line 86.

The petitioner's appeal is sustained, the judgment appealed from is reversed and the case is remitted to the Family Court for further proceedings.

*Leonard A. Kamaras,* for appellant.

*John A. Mutter,* for appellee.