359 A.2d 354.

HELEN A. BERG *vs.* DAVID C. BERG.

JULY 8, 1976.

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. David C. and Helen A. Berg were divorced by way of a final decree entered in the Family Court in August of 1969. Helen received custody of the couple's

two minor children and possession of the marital domicile located in East Greenwich. David was ordered to make monthly alimony and support payments as well as assume certain financial obligations relating to the maintenance of this house.

On October 2, 1970, David married Sandra, who was divorced and had three children by her previous marriage. Prior to the marriage David had a new home built in Cumberland and transferred all title and interest in the property to his new wife. David had one child by his second marriage, and in June of 1973 he adopted the three children of Sandra's previous marriage.

In February of 1974 David stopped making the payments that were due Helen. Three months later she responded by filing a motion to adjudge David in contempt. He, in turn, filed a motion to amend the final decree, seeking a modification of his payment obligations. Four months later a justice of the Family Court heard testimony from David and Helen on both motions. The trial justice found David in contempt and denied his motion to amend. David is before us on appeal. He claims that the trial justice, in denying his motion, erred by failing to consider the added financial burden of supporting his three adopted children. At the outset it would be helpful to detail how David, in 1974, could claim that there was a "shortfall" between his expenses and the financial resources available to pay them.

At the time of the final decree, September 1969, David had a net annual income of $15,552. The sources of this income were threefold: a salary of approximately $8,000, his Army Reserve pay, and a trust fund. In addition, he also owned a portfolio of stocks and bonds worth nearly $80,000. The Family Court, after considering these revenue sources, ordered David to pay Helen $195 a month in alimony, $220 a month for the support of the two chil-

dren, and the mortgage payments, taxes, water bills and insurance on the East Greenwich residence.

Time marched on, and in February 1974 David's net annual income, despite an increase in his salary, had decreased to $9,978. Evidently the decrease was related to his gradual liquidation of the $80,000 in stocks and bonds over the 5-year period to satisfy the increased financial obligation of supporting his new family. In the summer of 1970, he had liquidated nearly $50,000 of his portfolio to build a house in Cumberland. From October of 1970 to February of 1974, the yearly cost of David's maintaining his two families *exceeded* his net annual income. Accordingly, he was faced with a net annual deficit, which he erased by periodic liquidations of the stocks and bonds. The evidence indicates that the "shortfall" between David's expenses and his salaries and other income was about $5,000 a year.

By January of 1974 his portfolio had been reduced to approximately $11,000 worth of bonds, which he sold shortly thereafter to purchase assorted home furnishings, a new station wagon, and several short vacation trips. Consequently, when the February 1974 payments under the final decree became due, David no longer had a reservoir of available assets to satisfy the payments due under the final decree. However, instead of filing a motion to modify the decree, he self-adjusted the payment schedule to his available income, apparently placing the needs of his new family at a higher priority. As a result, Helen and her two children received sporadic and diminished payments, leaving them in a precarious financial position. The payment of the taxes, mortgage, and water bills on the East Greenwich residence was in arrears, while David's second family was residing in a mortgage-free home. In need of judicial assistance, David and Helen returned to the Family Court.

The issue presented by David's appeal is whether a

trial justice, presented with a husband's petition to modify an outstanding support order, may consider the added financial obligations arising from the husband's adoption of the apparently fatherless children of his new wife's previous marriage to determine whether there has been a "* * * change of circumstance or condition sufficient to warrant the modification of such an order * * *."[1]

It is recognized in Rhode Island and many other jurisdictions that the expenses incurred by a divorced father's remarriage may be considered in determining whether child support payments should be reduced, terminated, or increased. *See Cambra* v. *Cambra,* 114 R. I. 553, 336 A.2d 842 (1975); *Spaziano* v. *Spaziano,* 94 R. I. 258, 179 A.2d 849 (1962); Annot., 89 A.L.R.2d 106, 115-16 (1963) and cases collected therein. In order to determine whether the alleged change in circumstances is sufficient to warrant a modification, the trial justice must reasonably relate the current needs of the children with the father's demonstrated ability to provide for their reasonable support. *Spaziano* v. *Spaziano, supra* at 260, 179 A.2d at 851; *Heatherton* v. *Heatherton,* 110 R. I. 144, 146, 290 A.2d 912, 913-14 (1972); *Robinson* v. *Robinson,* 99 R. I. 425, 428, 208 A.2d 390, 392 (1965). The burden is upon the moving party to show "* * * that since the prior decree there has been either an abatement of the needs of his children or an impairment of his own financial ability to provide for those needs." *Heatherton* v. *Heatherton, supra* at 146, 290 A.2d at 913-14. It is abundantly clear from the evidence presented by David that by assuming the obligation of supporting two families, he had impaired his financial ability to provide for the needs of Helen and the children of the first marriage.

In *Spaziano* we recognized the right of a divorced father to remarry and have a family. The expenses incurred

---

[1]*Spaziano* v. *Spaziano,* 94 R. I. 258, 260, 179 A.2d 849, 851 (1962).

thereby could be considered by the trial justice in passing on a motion to modify the support and alimony award. While Helen claims that David's expense in supporting three adoptees is entitled to no consideration because an adoption is a voluntary act, we believe that it is irrelevant whether the children of the second marriage come by stork or adoption decree. In both cases the father is exercising his right to have a family by his new marriage. Similarly, if this man married a woman who had children whose father was deceased, he would, by adopting them, acquire a ready-made family unit rather than creating or adopting them individually. *See, e.g., Hanson v. Hanson,* 47 Wash.2d 439, 445, 287 P.2d 879, 883 (1955). In such situations the remarried father is "voluntarily" assuming financial obligations to support either children he has the original obligation to support (as their biological father) or those whose father is deceased and the state or their mother is supporting. By doing so, he is by necessity slicing his financial income into smaller pieces because all of his legally recognized dependents have a right to enjoy an equal standard of living. *Cf. Hoefler v. Hoefler,* 72 R. I. 54, 58, 47 A.2d 912, 914 (1946), *quoting Smith v. Smith,* 50 R. I. 278, 280, 146 A. 626, 627 (1929). In *Smith* this court observed that although the law compels the husband to support a wife who is living separate and apart from him, "* * * she is entitled to no better support from him than he can provide for himself." *Id.*

In according equal status to the children of the second marriage, be they natural children or adoptees, we wish to make the following observation. David, by adopting these children, has voluntarily assumed the legal obligation to support them. *In re Adoption of a Minor Child,* 109 R. I. 443, 450, 287 A.2d 115, 119 (1972). The adoption decree terminated the support obligation that belonged to Sandra's first husband. *See, Clapp v. Brighi,*

93 N. H. 431, 432, 43 A.2d 151, 152 (1945). David and others similarly situated, by their successful prosecution of an adoption petition, take on another's financial obligation, oftentimes at the expense and to the detriment of their first family. Such a detrimental result should be avoided if at all possible. When the adoption petition is being considered, the whereabouts and the ability of the natural father to meet his support obligation should be examined at some length before any affirmative action is taken on the pending petition. Once the adoption has been granted, a trial justice, when presented with a motion to amend a final decree, may consider the additional financial obligations incurred by this action only if he finds that the remarried father acted in good faith when he agreed to adopt the children of his wife's previous marriage.[2]

The record before us indicates that Sandra's first husband cannot be located, and we must assume that his whereabouts and ability to support were thoroughly investigated by the agency that furnished the Family Court with a preadoption report. While the trial justice characterized David's acquisition of the Cumberland real estate and the placing of its title in Sandra's name as being "in fraud of [his] obligation" to Helen and their children, he made no mention of the adoption proceedings. David's good faith must be resolved in the trial court. It is the trial justice's obligation to determine whether the adoption was but another facet of David's fraudulent behavior or whether his assumption of the duty of supporting the three adoptees was a demonstration of his nobler side.

---

[2]If the adoption was granted because the father of the children was either not locatable or incapable of making payments, then the adopting father is, in effect, assuming an obligation no different than that presented when the adopted children's father is dead. *See, e.g., Hanson* v. *Hanson,* 47 Wash.2d 439, 445, 287 P.2d 879, 833 (1955).

If the requisite finding of good faith is made, the trial justice may consider these additional financial obligations to determine whether there has been a "* * * change of circumstance or condition sufficient to warrant the modification of such an order * * *."[3]

The appeal from the trial justice's finding of contempt is denied. The case is remanded to the Family Court for reconsideration of Mr. Berg's motion to modify in accordance with this opinion.

*Alden C. Harrington, Rhode Island Legal Services, Inc.,* for petitioner.

*William Y. Chaika, Cohen & Chaika,* for respondent.

---

[3]Case cited note 1 *supra.*