373 A.2d 1198.

SHIRLEY ANN RENAUD *vs.* ERROL R. RENAUD.

JUNE 8, 1977.

PRESENT: Bevilacqua, C. J., Paolino. Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This is an appeal from a decree of the Family Court which denied the appellant's motion to reduce child support payments. For the reader's ease, we shall refer to the parties by their first names.

On May 24, 1974 the Family Court entered a final decree in a divorce action brought by Shirley against Errol (appellant herein). Shirley was awarded custody of their

infant, Charlotte, and Errol was ordered to pay $75 per week child support. On November 25 of that year, Errol once again assumed familial responsibilities. At the time of the marriage, his new wife, Ann, was already the mother of a child whom Errol admits is his. Apparently, Errol was dissatisfied with his $75 duty towards Charlotte because he moved for a reduction of payments, and approximately 2 weeks after Errol's second marriage the Family Court entered a consent decree between Errol and Shirley, reducing Errol's obligation to $40 per week. Thereafter, Errol once again moved for a reduction of payments, and it is the denial of this motion which is the subject of our review.

At the Family Court hearing, both Errol and Shirley testified. The thrust of Errol's argument was that since November 25, 1974, the day of his second wedding, his expenses had markedly increased, while his take-home pay had decreased, and that this constituted a change in circumstances. The specifics were that prior to November 25 his total weekly needs were $115.68 and his take-home pay was approximately $140, whereas at the time of this hearing his weekly expenses were $183.83 and his net pay was about $130. However, during the hearing Errol conceded that at least part of the increase in costs was attributable to his increased payments on a bank loan taken to finance a new motorcycle costing $2,900. Errol also testified, over his counsel's objection, that Ann's weekly take-home pay was $127. Her weekly expenses were $51.87.

In his decision the trial justice took note of Errol's and Ann's combined income; rejected Errol's expense claim of $183.83, noting with particular disapproval the motorcycle purchase; and found no change in circumstances warranting a reduction in payments from $40 a week.

Errol has claimed several errors, the first of which is that the trial justice should not have admitted and con-

sidered evidence concerning Ann's income. He concedes, though, that if this testimony was properly admitted, we need proceed no further. The question is one of the first impression in this state.[1]

General Laws 1956 (1969 Reenactment) §15-5-16 gives the Family Court power to regulate the custody of children and provide for their education, maintenance and support. We have previously observed that the Legislature intended to confer by this section "wide latitude to consider every factor that would serve to reveal in totality the circumstances and conditions * * *" pertaining to a child's welfare. *Cambra* v. *Cambra*, 114 R.I. 553, 560, 336 A.2d 842, 846 (1975). We are confronted now with the not uncommon situation of a parent's remarriage and the concomitant incurrence of greater financial responsibility. The court is well-aware that not only can two not live as cheaply as one, but also two families cost more than one. We also recognize, however, and counsel agreed, that at least in principle one's remarriage can ease financial straits and enable a parent to meet more easily those pre-existing obligations. Consequently, as one court has noted, "as a practical matter, it seems obvious that all of the funds available should be considered as ‚a whole in any effort to make a proper and equitable adjustment of * * * income * * *" between the first and second family. *Hanson* v. *Hanson*, 47 Wash. 2d 439, 444, 287 P.2d 879, 882 (1955).

The argument presented to us against admitting evidence of Ann's income is that such testimony is irrelevant because she has no duty to support Charlotte. Presumably, if such a duty did exist, the argument would not be raised. *See Cooper* v. *Cooper*, 132 Vt. 619, 326 A.2d 145

---

[1]In *Rock* v. *Rock*, 107 R.I. 172, 265 A.2d 640 (1970), evidence of the second wife's income was introduced, but the question presented herein was not raised, and we did not consider it.

(1974). We do not think, however, that the question turns on a stepparent's support duty or lack thereof. The evidence of the second income is relevant in considering reduction of support payments because it shows more fully the father's ability to meet all his obligations.[2] While there is some authority to the contrary,[3] we think the better rule is the more practical and realistic one, whch considers the needs and abilities of all concerned parties. *See Holesinger* v. *Holesinger,* 252 Iowa 374, 107 N.W.2d 247 (1961).

Errol's other contentions regarding the admissibility of this testimony are also ill-founded. He first argues that the evidence brought out in cross-examination went beyond the scope of direct. In admitting the evidence, however, the trial justice did not abuse his discretion. Errol's direct testimony concerned his ability to pay, and questions concerning his new wife's income were designed to shed more light on the problem. Such inquiries, designed to contradict or further explain testimony, have never been precluded on cross-examination. *State* v. *Ragonesi,* 112 R.I. 340, 309 A.2d 851 (1973).

---

[2]We realize that the situation might arise where prospective spouses agree to a financial arrangement of "what's mine is mine; what's yours is yours." In that case we would not reach the same conclusion we do today.

[3]Several courts have admitted evidence of a spouse's income in considering requests for increases or reductions of support payments. *Jones* v. *Jones,* 251 Ala. 179, 36 So. 2d 310 (1948); *Page* v. *Page,* 219 N.W.2d 556 (Iowa, 1974); *Rhodes* v. *Rhodes,* 7 S.W.2d 427 (Mo. App. 1928); *Udy* v. *Udy,* 195 Ore. 156, 244 P.2d 615 (1952); *Cooper* v. *Cooper,* 132 Vt. 619, 326 A.2d 145 (1974); *Hanson* v. *Hanson,* 47 Wash. 2d 439, 287 P.2d 879 (1955). *Contra, Dickens* v. *Dickens,* 82 Cal. App. 2d 717, 187 P.2d 91 (1947); *Sanders* v. *Sanders,* 230 S.C. 263, 95 S.E.2d 440 (1956). Other cases have turned on community property considerations. *Morace* v. *Morace,* 220 So.2d 775 (La. App. 1969); *Zara* v. *Zara,* 204 So.2d 76 (La. App. 1967).

The appellant also argues that the testimony violated the hearsay and best evidence rules, but these claims are without merit. Errol was not testifying to an out-of-court assertion; nor was any document introduced which might have raised a "best evidence" question.

The appeal is denied and dismissed, and the decree is affirmed.

*James Cardono,* for petitioner.

*Kirshenbaum Law Offices, Inc., Allen M. Kirshenbaum,* for respondent.