**Laura I. W. WILLIAMS**

v.

**John C. WILLIAMS.**

**No. 78–423–Appeal.**

Supreme Court of Rhode Island.

May 6, 1981.

Asquith, Wiley & Ryan, Edward W. Moses, Providence, for petitioner.

Abedon, Michaelson, Stanzler, Biener, Skolnik & Lipsey, Howard I. Lipsey, Providence, for respondent.

OPINION

MURRAY, Justice.

This is an appeal by the petitioner from a Family Court decree denying the petitioner's motion to adjudge the respondent in contempt for failure to comply with the provisions of a final divorce decree in regard to child support and granting the respondent's petition to modify the final decree with respect to child support. We affirm.

On October 29, 1976, a final decree was entered in the Family Court granting a divorce to petitioner, Laura I. W. Williams (Laura), from respondent, John C. Williams (John), on the grounds of irreconcilable differences. Under the terms of the final decree, Laura was awarded custody of the two minor children born of the marriage. A separation and property-settlement agreement entered into by the parties on

July 12, 1976, was incorporated but not merged into the final decree. The decree further ordered John to pay $290 per month to Laura for the support of the two minor children. Additional increases in the amount of child support were set forth in paragraph 9 of the agreement, which, in pertinent part, provided:

"*Support and Maintenance of Children.* a) Based on a net yearly salary of Nine Thousand Three Hundred ($9,300.00) Dollars, the Husband shall pay to the Wife for the support and maintenance of the children the sum of Two Hundred and Ninety ($290.00) Dollars per month payable on the fifteenth day of each month subject to other provisions hereinafter set forth. b) In addition to the amount specified in paragraph 9(a) above, said support payments shall be subject to increase according to the following formula:

"(1) Husband shall pay Wife forty percent (40%) of each and every increase he receives in his net yearly salary over Nine Thousand Three Hundred ($9,300.00) Dollars until said net yearly salary reaches Fifteen Thousand ($15,000.00) Dollars.

"(2) When Husband's net yearly salary reaches Fifteen Thousand ($15,000.00) Dollars, Husband shall pay Wife thirty percent (30%) of each and every increase over Fifteen Thousand ($15,000.00) Dollars until said net yearly salary reaches Twenty Thousand ($20,000.00) Dollars.

"(3) When Husband's net yearly salary reaches Twenty Thousand ($20,000.00) Dollars Husband shall pay Wife twenty[–]five percent (25%) of each and every increase he receives over said Twenty Thousand ($20,000.00) [Dollars].

"(4) Husband will pay Wife thirty[–]five percent (35%) of any net summer employment salary.

"c) For purposes of clarification and computation:

"(1) Each yearly increase shall be divided by twelve (12) and the sum arrived at shall be added to the most recent monthly support figure being paid.

"(2) Net yearly salary shall mean that amount which results after deducting State, Federal and local taxes and other sums required to be deducted by the employer (about which Husband has no option) from the gross yearly salary."

On May 12, 1978, John filed a petition to modify the final divorce decree, alleging a substantial change in circumstances, *inter alia*, in that since the entry of the decree Laura had remarried and was working full time. Because Laura was now in a position to contribute more equally to the support of the minor children, John requested a reduction in the amount of his support payments under the decree. The following week, Laura filed a motion to adjudge John in contempt, alleging that he had failed to make the payments for the support of the minor children in the amounts and at the times required in the final decree. In addition, she alleged that she was unable to determine the specific amount of the arrearages owed by John because he had failed to provide her with the required information upon which the amount of support owed was to be determined.[1] In her motion Laura prayed that John be adjudged in contempt of court for his failure to comply with the terms of the final decree and he be required to make an accounting of his past earnings to the court and to her so that the amount of arrearage owed to her could be determined.

A hearing on both motions was held before a justice of the Family Court on June 9, 1978. The evidence introduced at the hearing can be best summarized as follows.

Laura, who at the time of the hearing had remarried and was living in Baton Rouge, Louisiana, with her husband and her two children, testified that she had worked during the nine years of her marriage to John. She stated, however, that she had left work when their son was born in June 1976 and thus was not working at the time of the entry of the final decree. In June of

1. According to paragraph 9(c)(3) of the separation and property-settlement agreement, John was required to submit to Laura each year copies of his W-2 forms or other statement of wages from his employer or employers.

1977 she remarried, and a few months later she returned to her teaching duties in an elementary school in Baton Rouge.

Laura testified that the salary for her present teaching position was $10,600 per year and that her net weekly salary was $152. Her present husband's yearly salary was approximately $20,000. Laura said that she had claimed deductions for herself and for the two children, that she and her husband had filed a joint tax return for 1977, and that they had received a $680 refund.

She further testified that she and her two children lived in a home that she and her present husband owned jointly. Laura also testified that she had approximately $5,000 in a savings account and that she received approximately $600 per year in dividends from stocks that she owned. She also received $500 per month as a beneficiary of a trust fund of which she had been the beneficiary prior to the time of the final decree.

An expense sheet detailing Laura's expenses at the time of the hearing was introduced into evidence. This sheet indicated that her present expenses for herself and the two children were $1,823 per month. She testified that her expenses in 1976 had been based on those for herself and only one child and that there had been "some increase * * * for inflation and so forth," but that the figures for her current expenses were "not too far off the mark" from her expenses at the time of the final decree.

John testified that he was, and had been at the time of the final decree, employed at Rhode Island College as an assistant professor of chemistry and that his salary at the time of the decree was approximately $9,300 per year. He testified that, except for $8.75 in his checking account and a 1969 automobile, he had no assets. John introduced into evidence two expense sheets indicating that his expenses had increased from $5,896 at the time of the decree to $9,193.92 at the time of the hearing.

With respect to her motion to adjudge John in contempt, Laura established John's support obligations under the final decree and then introduced into evidence summaries of John's wage records from July 3, 1976 to May 1978. These summaries indicated John's gross and net wages, and itemized all deductions from his wages for each pay period during that time.

John testified, however, that he had made all support payments to Laura as required by the final decree. In fact, he testified that according to his calculations he had actually paid Laura $129.79 more than required by the decree. Specifically, John testified that during 1976 he had made support payments to Laura totaling $1,617.51. In addition, the parties later stipulated during the hearing that the amount of support payments paid by John during 1977 and in 1978 up to the date of the hearing was $5,747. Thus, the uncontroverted evidence introduced indicated that John had paid Laura $7,364.51 for support from the time of the entry of the final decree to the date of the hearing.

After the close of the testimony and following argument of counsel, the trial justice denied John's motion to reopen his case to allow him to testify concerning the mathematical formula he had used to determine that he was $129.79 ahead in his support payments.

Immediately following argument of counsel, the trial justice rendered a bench decision in which he made the following findings and orders:

"THE COURT: All right[.]

The motion to adjudge in contempt is denied. By the testimony and facts presented to The Court, The Court finds there is no arrearage due.

"Visitation rights have already been fixed by agreement of the parties.

"The motion to modify the decree to decrease the payments is granted in this respect: The Court finds that the respondent's income is approximately the same, The Court finds that his expenses have increased substantially. The Court finds as a fact that the petitioner, in her testimony freely admitted that the expenses—her expenses for the support of

the children are substantially the same at the present time as they were in 1976. Therefore, The Court finds there is no substantial change in the expenses of the petitioner. I might say, that support of the children, regardless of what the property-settlement agreement states and regardless what the decrees state—support of the children is always open and can always be reviewed by The Court. The Court decreases the amount of the weekly payments for the support of the two children to $25 per child, or a total of $50 for the two children, per week."

A decree incorporating the trial justice's decision was entered on July 6, 1978. In her appeal from that decree, Laura faults the trial justice's actions in two respects.

## LAURA'S MOTION TO ADJUDGE JOHN IN CONTEMPT

Laura contends first that the trial justice failed to consider certain uncontroverted evidence in denying her motion to adjudge John in contempt of the final decree. She points out that the trial justice, in his decision denying the motion, merely stated that "[t]he motion to adjudge in contempt is denied. By the testimony and facts presented to The Court, The Court finds there is no arrearage due."

Laura faults the trial justice for not stating what "testimony and facts" he was relying upon and which "testimony and facts" he was rejecting. It is evident from his decision, Laura continues, that the trial justice gave no consideration to the amount of John's support obligation established by the separation agreement and the final decree, that he ignored the summary of John's payroll records introduced into evidence, and that he similarly ignored the uncontroverted evidence of the amount of child support actually paid by John.

■ The determination whether to adjudge John in contempt for his failure to comply with the support provisions of the final decree was addressed to the trial justice's sound judicial discretion. *Brown v. Brown*, 114 R.I. 117, 120, 329 A.2d 200, 201 (1974); *Shaw v. Shaw*, 81 R.I. 487, 491, 104

A.2d 754, 756 (1954). Such discretion is to be exercised in accordance with the particular facts and findings as to the extent and willfulness of respondent's contempt for the authority and dignity of the court. *Shonting v. Shonting*, R.I., 374 A.2d 797, 798 (1977); *Tente v. Tente*, 112 R.I. 636, 639, 314 A.2d 149, 151 (1974); *Hartwich v. Hartwich*, 82 R.I. 54, 57, 105 A.2d 821, 823 (1954). On review, we shall not disturb the trial justice's decision absent a showing of a clear abuse of that discretion. *Marek v. Marek*, R.I., 383 A.2d 1031, 1032–33 (1978).

■ We have said that a complainant who seeks to invoke the court's contempt power must make a prima facie showing of contempt by introducing proof indicating the fact of the default and the amount due. *Silva v. Silva*, R.I., 404 A.2d 829, 831 (1979) (citing 2 Nelson, *Divorce and Annulment* §§ 16.11 at 408–09 and 16.19 at 419 (2d ed. 1961)).

■ A prima facie case is established by the petitioner's producing the original support order and offering proof of nonpayment; once the prima facie case is established, the question becomes whether the respondent's noncompliance was justifiable. *Id.; Brown v. Brown*, 114 R.I. at 119–20, 329 A.2d at 201.

■ In the case at bar, the trial justice's determination that John was not in contempt of the divorce decree and his finding that no arrearages were owed is entitled to great weight, and we shall not disturb such a finding absent a showing that it was based on an oversight or misconception of material evidence on a controlling issue or that it was otherwise clearly wrong. *Brown v. Brown*, 114 R.I. at 120, 329 A.2d at 201–02. Laura has not succeeded, however, in convincing us that the trial justice failed to consider the evidence presented at the hearing.

Our reading of the record indicates that during the course of the hearing, Laura established the amount of John's support obligation under the final decree. She also introduced into evidence the summaries of

John's payroll wages from the time of the entry of the final decree, but she presented no evidence as to the exact amount of the arrearage of support payments she was owed by John. The only evidence concerning the amount of support payments owed by John introduced at the hearing, and thus the only evidence available for the trial justice to consider, was John's own testimony that he was $129.79 ahead in his payments.

Although Laura presents, in the record-appendix of her brief, various mathematical computations regarding the amount of the arrearage owed, these computations were never admitted as evidence before the trial justice for his consideration. As a result of this omission, Laura not only failed to sustain her burden of establishing a prima facie case that John was in arrears in his child support payments but also failed to establish the exact amount of that arrearage. On the basis of this record, we are unable to say that the trial justice's finding that no arrearage was due was clearly erroneous. Neither can we say that the trial justice clearly abused his discretion in denying Laura's motions to adjudge John in contempt.

### JOHN'S MOTION TO MODIFY THE FINAL DECREE

Laura next argues that the trial justice erred in granting John's motion to modify the final decree so as to reduce support payments to her. She raises four arguments in support of her contention. Before discussing the merits of each of these arguments, however, it may be well to recall that in *McCann v. McCann*, R.I., 396 A.2d 942 (1979), we summarized the correct rules of law to be followed by trial justices in modification of support decrees. There we said that

" 'the rights of the parties are settled by the existing decree and cannot be altered unless the moving party by a fair preponderance of the evidence shows that subsequent to the entry of that decree a change of circumstances or conditions occurred.' *Heatherton v. Heatherton*, 110

R.I. 144, 145, 290 A.2d 912, 913 (1972). *See also Peirson v. Peirson*, R.I., 382 A.2d 823, 824 (1978). Consistent with this view, the moving party must show that subsequent to the final decree, there has been a change in either the needs of the minor child or his own ability to meet those needs. *Id.*, 382 A.2d at 824; *Heatherton v. Heatherton*, 110 R.I. at 146, 290 A.2d at 913–14. Once such a showing has been made, any resulting modification by the trial court must reflect a reasonable relationship between the current needs of the child and the father's present ability to pay. *Id.* at 146, 290 A.2d at 914; *D'Arezzo v. D'Arezzo*, 107 R.I. 422, 425, 267 A.2d 683, 684 (1970); *Spaziano v. Spaziano*, 94 R.I. 258, 261, 179 A.2d 849, 851 (1962). The modification order may not be based unilaterally upon either 'the needs and welfare of the children or the capacity of the father to pay.' " *Id.* 396 A.2d at 944.

It has long been settled in this jurisdiction that a trial justice's decision to modify the support provisions of a divorce decree is entitled to great weight. We shall not disturb such a decision on appeal unless we are convinced that it is based on findings that are clearly wrong or unless, in making such findings, the trial justice overlooked material evidence or misconceived the applicable law. *Hull v. Hull*, R.I., 384 A.2d 1065, 1067 (1978); *Rock v. Rock*, 107 R.I. 172, 178, 265 A.2d 640, 644 (1970); *Ricciardi v. Ricciardi*, 91 R.I. 455, 458, 164 A.2d 855, 857 (1960).

Laura's arguments that the trial justice erred in granting John's motion to modify the final decree in regard to support payments can be disposed of without a great deal of discussion. She first contends that the trial justice erroneously found that John's income had remained "approximately the same" from the time of the final decree to the time of the hearing. She asserts that this finding is clearly erroneous in view of the evidence that his net yearly salary had increased from $9,300 at the time of the final decree to $11,138.40 at the time of the hearing. In reviewing the trial

**456**

justice's decision, however, in light of evidence introduced at trial, we are unable to rule that the trial justice was clearly wrong in finding that John's income was "approximately the same" in view of the fact that the increase amounted to approximately $1,800.

Laura's second contention is that the trial justice neglected to make any specific findings concerning the legitimacy of John's increased expenses. She points out that John claimed a considerable increase in his expenses without giving any explanation for it. This argument, however, overlooks the fact that Laura failed to challenge this evidence when it was introduced at the hearing.

Third, Laura argues that the trial justice in his decision gave little consideration to the needs of the children and that by basing his decision solely on the purported decrease in respondent's ability to make the required support payments, he violated the rule enunciated in *McCann v. McCann*, R.I., 396 A.2d 942 (1979) and *Spaziano v. Spaziano*, 94 R.I. 258, 179 A.2d 849 (1962). This argument is simply without merit. The trial justice in his decision found that Laura's "expenses for the support of the children are substantially the same at the present time as they were [at the time of the final decree]"—a finding that is fully supported by Laura's testimony at the hearing.

In our opinion the trial justice applied the correct rule of law to be followed in modification of support provisions of divorce decrees. The record indicates also that John sustained his burden of proving by a fair preponderance of the evidence that a change in circumstances occurred since the entry of the final decree.

The evidence introduced at the hearing showed that the needs of the children were substantially the same as they were earlier when the final decree was entered, that the petitioner had remarried and had started to work on a full-time basis, and that even though the respondent's income had increased, the accompanying increase in his living expenses was considerably higher than his increase in earnings. Thus the trial justice's decision is sustained by the uncontroverted evidence in the record. In our view he neither overlooked nor misconceived any material evidence with respect to this issue. All of Laura's arguments to the contrary are without merit.

For the foregoing reasons, Laura's appeal is denied and dismissed, the decree appealed from is affirmed, and the papers in this matter may be remitted to the Family Court.

SHEA, J., did not participate.