Linda DAVEY

v.

Melville G. DAVEY.

No. 80–377–Appeal.

Supreme Court of Rhode Island.

Nov. 9, 1981.

Toro Law Associates, Inc., Eugene F. Toro, Providence, for petitioner.

## OPINION

KELLEHER, Justice.

On June 25, 1979, a final decree of divorce terminated the matrimonial bond that had existed between Linda Davey and her husband, Melville. The final decree awarded custody of the couple's three minor children to Linda and ordered Melville to pay $420 a month for the support of the children.

Since the entry of the final decree, Linda has returned to the Family Court on several occasions, seeking to have Melville held in contempt for his failure to abide by the order requiring the $420 support payment. On April 2, 1980, the couple was before the Family Court. Linda was pressing another contempt petition; and Melville, who had been in the custody of the sheriff during late February for a very brief time because of a body attachment issued as a result of a December 1979 hearing, was seeking a reduction in the support payments.

Linda told the trial justice that the couple's three children were aged eleven, eight, and four. She reported that Melville's arrearage on the support payments totaled $3,390. Linda was working as a purchasing agent, earning a take-home pay of $160 a week, and her total bank deposits amounted to about $400.

Melville, while testifying as an adverse witness, conceded that he had not complied with the dictates of the support payment order. He described himself as a self-employed art dealer whose 1979 gross income amounted to $6,700. He estimated his gross profit for the first quarter of 1980 to be $2,538. Some of his expenses, he said, were business related and others were personal.

Later, after Melville had returned to the witness stand and testified, the trial justice remarked, "Sounds to me you're better off today than you were in June of 1979." Melville's counsel responded, "In theory, you are right. * * * The whole problem, Your Honor, is this is the first time he has ever had counsel. The agreement that he entered into * * * should never have been entered into to begin with."

Shortly after this exchange, the trial justice called counsel into his chambers and told them that he was continuing the hearing on Melville's motion to April 22. Counsel was also informed that if Melville paid the arrearage and the $1,500 counsel fee to Linda's counsel prior to Melville's next scheduled court appearance, the trial justice would "entertain a consent order modifying the payments that the respondent has to make for the support of the children to $50 a week."

On April 22, 1980, Linda and Melville were back before the trial justice. Melville conceded that he had not paid the arrearage or the counsel fee. When the trial justice asked Linda's counsel if he could agree to a reduction of the support order, counsel made it clear that no such agreement would be forthcoming. Upon hearing this, the trial justice wondered aloud how he could modify the decree in the absence of a change in circumstances. After a further exchange with both counsel, the trial justice asked Melville whether, assuming a court-ordered reduction, he would faithfully pay the $50 each and every week. Melville responded, "I will try." When Linda's counsel reminded the trial justice of the April 2 conference at which the trial justice had made it clear that any consideration of modification was dependent on Melville's payment in full of the support arrearage, the trial justice acknowledged the accuracy of this observation but expressed a desire "to do equity" and told Linda's counsel, "On appeal you could probably reverse this court." Subsequently, a decree was entered reducing the $420 monthly support order to one calling for a $50 weekly payment. Linda left the Family Court and came to this court.

 The trial justice was an expert prognosticator when he described Linda's chances of vacating the May 6, 1980 order. We need only point to *McCann v. McCann*, R.I., 396 A.2d 942, 944 (1979), where this court made it clear that a decree ordering child support could not be changed unless

" 'the moving party by a fair preponderance of the evidence shows that subsequent to the entry of that decree a change of circumstances or conditions occurred.' * * * Consistent with this view, the moving party must show that subsequent to the final decree, there has been a change in either the needs of the minor child or his own ability to meet those needs. * * * Once such a showing has been made, any resulting modification by the trial court must reflect a reasonable relationship between the cur-

rent needs of the child and the father's present ability to pay. * * * The modification order may not be based unilaterally upon either 'the needs and welfare of the children or the capacity of the father to pay.' " [Citations omitted.]

Accordingly, under the criteria listed in *McCann*, it is clear that there was insufficient evidence adduced at the hearing to warrant a reduction in the support payment. The fact that the trial justice considered the original support order inequitable is totally irrelevant to the purposes of a petition to modify a support payment.

*Heatherton v. Heatherton*, 110 R.I. 144, 290 A.2d 912 (1972); *D'Arezzo v. D'Arezzo*, 107 R.I. 422, 267 A.2d 683 (1970).

Linda's appeal is sustained, the order authorizing a reduction is vacated, and the case is remanded to the Family Court.[1]

1. So far as Linda is concerned, the April proceedings were not a complete exercise in futility. At the April 22, 1980 hearing, the trial justice, before reducing the monthly support payments, appointed a master to take possession of a grandfather's clock owned by Melville. Subsequently, the master reported that the clock had an appraised value of $2,500 and it had been placed in storage. Later, the master was authorized to deliver the clock to Linda at a place of her choice, provided she pay the fees due the master and appraiser as well as the accumulated storage charges. If Linda did take possession of the clock, Melville's liability for the arrearage and counsel fee would be reduced accordingly. At oral argument, we were informed that Linda had somehow accumulated enough funds to pay the fees and expenses, which appear to have amounted to approximately $600. Thus, Melville's court liability has been reduced by approximately $1,900, and Linda, as well as her three children are enjoying the "tick tock" of the grandfather's clock.