Josephine BOCCHINO

v.

John BOCCHINO.

No. 81–320–Appeal.

Supreme Court of Rhode Island.

July 15, 1983.

Timothy D. O'Hara, Providence, for plaintiff.

Gerald G. Norigian, Warwick, for defendant.

## OPINION

MURRAY, Justice.

This is an appeal from an order of the Family Court modifying the alimony provisions contained in a final divorce decree. The former wife, Josephine Bocchino (Josephine) contends that the trial justice erred in concluding that her former husband, John Bocchino (John), had met the burden of proof on his petition to modify the alimony award but that she had not met the burden of proof on her petition to modify. For the reasons that follow, we agree and therefore reverse the judgment of the Family Court.

A *final* divorce decree was entered in the Family Court on April 29, 1976, dissolving the marriage of John and Josephine Bocchino. The decree required John to pay alimony to Josephine in the amount of $75 per week, to convey to her title and interest in a home owned by both parties, and to provide her with Blue Cross/Blue Shield coverage.

On November 17, 1980, Josephine filed a motion in Family Court to adjudge John in contempt for failure to pay alimony for eight weeks and for failure to pay for Blue Cross/Blue Shield coverage since April 14, 1979. On November 21, 1980, Josephine filed a petition to modify the alimony award. On December 5, 1980, John filed his own petition to modify. The matter was first heard in the Family Court on December 23, 1980. The parties presented no evidence at that hearing. However, the court entered an order subsequently requiring John to pay $40 per week in alimony. The court also found John to be $555 in arrears in the payment of alimony and ordered him to pay $500 immediately to purge himself of contempt. Another hearing was set at which time the court intended to hear evidence on the petitions to modify and to rule on the motion to adjudge John in contempt for failure to pay for Josephine's Blue Cross/Blue Shield coverage.

That hearing was held on April 6, 1981. Josephine testified regarding her present income and expenses. She indicated that her income consisted of $164 per month in Social Security plus $40 per week in alimony payments since the hearing on December 23, 1980. She listed her expenses as $136.72 per week. This amount included Blue Cross/Blue Shield payments, which she had had to assume herself since April 1979, and various medical expenditures in the amount of approximately $1,124 yearly arising from a diabetic condition and treatment for her eyes and legs. Josephine testified that since the entry of the final decree she had become diabetic, had undergone surgery for her eyes and legs and for gallstones, and that she required continuing treatment for

these various conditions. However, she was unable to list the precise cost of any of these medical expenses.

Josephine further testified that in August 1980 her son and daughter-in-law had moved in with her and had begun to pay half of her utility bills (electricity, heat, phone, and water). However, she could not specify exactly how much her son and his wife had contributed toward the bills since they moved in. She explained that they paid for their own food, that they did not contribute toward the payment of house taxes or insurance, but that her son did help with the upkeep of the house.

John Bocchino testified that he had remarried and had lived in South Carolina for the previous five years in a house owned by his wife. He told the court that he was half owner of a corporation called Supreme Ice Cream. At the time of the final decree, he had been employed by the company, receiving an annual salary of $2,300, plus additional benefits. He was then living rent-free in a house owned by Supreme Ice Cream, and the company paid his automobile expenses, as well as Blue Cross/Blue Shield costs for both himself and Josephine. Sometime after the divorce, Supreme Ice Cream closed operations and John ceased receiving the salary and enumerated benefits. However, he still had a half-interest in the company, which, according to his testimony, owned real estate assessed at approximately $48,000.[1]

John testified that at the time of the divorce he had an income of $7,514 per year, which included $2,300 salary from Supreme Ice Cream, $3,300 from a state pension, and $1,914 in dividends and interest. At the time of the hearing, his income had increased to $8,406 annually. Although he no longer received a salary from Supreme Ice Cream, he had begun to receive $3,814 annually in Social Security. His interest and dividend income had declined to $1,292. John listed his expenses as $160.52 per week.[2]

After hearing all of the evidence, the trial justice found as a fact that Josephine had failed to show a substantial change in her circumstances. He based this finding on the lack of evidence regarding her expenses at the time of the final decree and her failure to present testimony listing her various medical expenses and quantifying the amount her son contributed to pay household expenses. Therefore, he denied her petition to modify the final decree to increase alimony payments.

On the other hand, the trial justice found that John had proven a change in his circumstances, both with regard to his expenses and to his ability to pay. He based this finding on the fact that John had remarried and on the fact that his living expenses that had previously been paid for by Supreme Ice Cream were no longer paid for by the corporation. Therefore, the trial justice granted John's petition to modify the final decree, reduced John's alimony payments to $40 per week, and canceled his obligation to provide Blue Cross/Blue Shield coverage for Josephine.

The sole issue presented for determination by this court is whether the trial justice erred in concluding that defendant had met his burden of proof on the petition to modify but that plaintiff had not met her burden.

It is well-settled in this jurisdiction that it is incumbent upon a party seeking to modify the terms of an existing support order to prove by a fair preponder-

1. Josephine's counsel attempted to elicit testimony regarding the market value of the real estate owned by Supreme Ice Cream and the value of the company's other assets. As John had not been involved in actual negotiations for sale of the company, the trial justice sustained his counsel's objections to this testimony. The trial justice also refused to allow plaintiff to continue the case in order to bring in the other co-owner to testify on these matters.

2. John testified that his new wife received $215 per month in Social Security and approximately $3,800 per year in interest. He also told the court that he owned various stocks and a boat that he had unsuccessfully tried to sell for $1,200.

ance of the evidence that a change in circumstances or conditions has occurred subsequent to the entry of the prior order. *Williams v. Williams,* R.I., 429 A.2d 450, 455 (1981) (citing *McCann v. McCann,* 121 R.I. 173, 175, 396 A.2d 942, 944 (1979); *Heatherton v. Heatherton,* 110 R.I. 144, 145, 290 A.2d 912, 913 (1972)). This rule applies to the modification of both alimony and child-support orders. *See Davey v. Davey,* R.I., 436 A.2d 1083 (1981); *Williams v. Williams,* R.I., 429 A.2d 450 (1981). This means that the moving party must show either a change in the needs of the party receiving support or a change in the ability to pay of the one making support payments. *Williams v. Williams,* R.I., 429 A.2d at 455; *McCann v. McCann,* 121 R.I. 173, 176, 396 A.2d 942, 944 (1979); *Peirson v. Peirson,* 119 R.I. 701, 704, 382 A.2d 823, 824 (1978). In order to prove these changes, a party must present evidence showing a comparison of the relationship between the needs and ability to pay at the time of the prior order and that between the present income and expenses of the parties. *Peirson v. Peirson,* 119 R.I. at 704, 382 A.2d at 824. The modification order may not be based unilaterally either on the needs of one party or on the other party's ability to pay. *Williams v. Williams* and *McCann v. McCann,* both *supra.* *See Bates v. Bates,* R.I., 440 A.2d 724 (1982).

We are presented here with a situation in which both parties have moved for modification of a support order. Thus, each must independently prove that either the wife's needs or the husband's ability to pay have changed. We believe that neither party before us has met that burden of proof.

■ Josephine testified that her medical expenditures had increased but she could not specify an amount. She also testified that her son had begun to assist with her utility expenses but could not specify the amount of his contribution. She introduced no evidence of her needs and expenses at the time of the final decree; thus, it was impossible to assess whether there had been a substantial change in her circumstances which would warrant a modification of the support order. Therefore, the trial justice was correct in denying Josephine's petition to increase support payments.

■ However, we find that the trial justice erred in granting John's petition to reduce alimony payments as John had also failed to produce sufficient evidence of a change in his circumstances. John testified that at the time of the final decree his living expenses had been paid for by Supreme Ice Cream Company but that he no longer received those benefits. However, he produced no evidence of what his expenses were at the time of the final decree in order to compare them to his expenses at the time of the hearing. John presented evidence that his income had increased from $7,514 to $8,406 annually even though he was no longer employed. He testified that he owned assets in Supreme Ice Cream as well as stocks and bonds that he had owned at the time of the final decree, but he presented no proof that their value had decreased since April 1976. Finally, John had remarried, but he produced no evidence that he had incurred any expenses on account of his new wife. In fact, there was evidence that she owned the house in which they lived and that she had some income of her own.

■ Generally, when we review the order of a trial justice modifying the support provisions of a final decree, we afford great weight to his decision. We do not disturb the determination of the trial justice unless we are convinced that it is based on findings that are clearly wrong or unless, in making such findings, he or she overlooked material evidence or misconceived the applicable law. *Bates v. Bates,* R.I., 440 A.2d 724, 726 (1982); *Williams v. Williams,* R.I., 429 A.2d 450, 455 (1981); *Hull v. Hull,* 120 R.I. 77, 79–80, 384 A.2d 1065, 1067 (1978).

In the instant case, the trial justice based his decision on erroneous findings. He found that John's circumstances had changed simply because he had remarried. However, there was no evidence regarding

any expenses associated with John's new wife. There was, in fact, evidence that she owned her home and had her own income.[3]

Furthermore, the trial justice refused to take into account the value of the Supreme Ice Cream Company assets owned by John because he had owned those assets at the time of the final decree. This court has held that the trial court may take into account capital assets and any other sources of income in considering whether a party seeking to modify the terms of a final decree has met its burden of proof. *McHenry v. McHenry,* R.I., 424 A.2d 1067, 1069 (1981); *Bellows v. Bellows,* 119 R.I. 689, 693, 382 A.2d 816, 819 (1978). Thus, these assets and any change in their value should have been taken into account when assessing whether there had been a change in John's ability to pay. The trial justice erred in refusing to do so.

Finally, as detailed above, we think the trial justice erred in finding that John had shown a sufficient material change in his circumstances, or a material change in Josephine's circumstances, to warrant a reduction in alimony payments and a termination of Blue Cross/Blue Shield-coverage payments.

For the reasons stated, the plaintiff's appeal is sustained, the order appealed from is vacated, and the case is remanded to the Family Court for further proceedings consistent with this opinion.

---

**3.** This court has held that evidence of a second wife's income may be relevant when considering reduction of support payments because it may show " 'more fully the [husband's] ability to meet all his obligations.' " *Bellows v. Bellows,* 119 R.I. 689, 694, 382 A.2d 816, 819 (1978); *Renaud v. Renaud,* 118 R.I. 365, 368, 373 A.2d 1198, 1200 (1977).