**Sally Smith RAMSBOTTOM**

v.

**Donald Hunt RAMSBOTTOM.**

**Nos. 87–51–M.P., 87–59–Appeal.**

Supreme Court of Rhode Island.

June 23, 1988.

Dianne Griffin, East Providence, John F. Cuzzone, Jr. (Quinn, Cuzzone & Geremia), Providence, for plaintiff.

Eugene F. Toro (Toro Law Associates), Providence, for defendant.

## OPINION

FAY, Chief Justice.

This case is before this court on a petition for certiorari. In granting certiorari, this court will focus its analysis on the primary issue of whether the trial judge erred when she terminated the defendant's alimony obligation because of the plaintiff's alleged violation of a marital-settlement agreement that had previously merged into a final-divorce judgment. We reverse the trial judge and hold that a merger of a marital-settlement agreement into a divorce judgment completely vitiates the agreement. The facts of this case are as follows.

Donald H. Ramsbottom (hereinafter defendant) and Sally Smith Ramsbottom (hereinafter plaintiff) were married on June 14, 1952. In September 1982 plaintiff filed a complaint for divorce against defendant, and on April 19, 1984, the parties entered into a marital-settlement agreement setting forth new living arrangements, a division of the marital property, and alimony payments of 25 percent of the husband's gross annual salary.

The agreement subsequently merged into a judgment of final divorce entered on July 27, 1984.

In April 1986 defendant filed a complaint against plaintiff seeking to terminate his alimony payments. That complaint alleged that plaintiff had violated the terms of the separation agreement by cohabiting with an unrelated male for a period in excess of sixty days. A hearing on defendant's motion was held before a trial judge of the Family Court in October 1986. At that hearing an extensive amount of testimony focused on the issue of cohabitation. The trial judge found that plaintiff violated the terms of the separation agreement when she and an unrelated male friend entered into a contract to lease a condominium in Florida for a period in excess of sixty days. The trial judge also found, for reasons that need not be enumerated by this court, that plaintiff and her male friend had held themselves out to their respective families and friends to be a "twosome" in the sense of husband and wife. This relationship existed for approximately four years, and thus the trial judge found it fulfilled the necessary criterion that established a relationship such as "cohabitation."

The defendant urges this court to sustain the trial judge's decision that plaintiff had cohabited with an unrelated male in violation of the separation agreement and was thus correct when she terminated his obligation for alimony payments. This court, however, declines to address the issue of cohabitation. Instead this court holds that merger results in the contract's loss of its separate identity. Consequently, the Family Court may modify the judgment to the same extent to which it would have been empowered in the original suit.

■ The primary issue before this court is not what constitutes cohabitation, but rather whether the trial judge erred when she looked to the "merged" marital-settlement agreement as an independent contract that controlled the rights and obligations of the parties. The record in this case clearly indicates that the parties to this action fully intended that the marital-settlement agreement merge into the final-

divorce judgment. On July 27, 1984, with the assent of both parties, the trial judge entered a final-divorce judgment that merged the marital-settlement agreement of April 1984 into that judgment.

Numerous authorities and jurisdictions have addressed the issue of merger and have held that the intention of the parties is the controlling factor when determining whether merger has occurred. *Flynn v. Flynn*, 42 Cal. 2d 55, 265 P.2d 865 (1954); *Flicker v. Chenitz*, 55 N.J. Super. 273, 150 A.2d 688 (1959); Clark, *The Law of Domestic Relations in the United States*, § 18.17 at 779 (2d ed. 1988). However, in the instant case the question of the intention of the parties not only is clear but also has been fulfilled. As we previously noted, the trial judge merged the agreement into the final-divorce judgment.

On the occurrence of merger, the contract between the parties no longer exists, and in its stead there is a judgment of divorce that outlines the rights, privileges, and obligations of the respective parties. *Murphy v. Murphy*, 467 A.2d 129 (Del. Fam. Ct. 1983); *see Guglielmi v. Guglielmi*, 431 A.2d 1226 (R.I. 1981); *Weiner v. Weiner*, 113 R.I. 403, 321 A.2d 425 (1974). Because the agreement is no longer a private contract between the parties, the rules that govern the enforcement of a divorce judgment control. Clark, § 18.17 at 779; Green & Long, *Marriage & Family Law Agreements*, § 4.07 at 222 (1984). As plaintiff contends, the trial judge erred when she ruled in December 1986 that the marital-settlement agreement existed as a viable and controlling contract between the parties. We agree with plaintiff's assertion that upon merger the contract ceased its legal existence and that any issues concerning the status of alimony should have been resolved by referring to the controlling law on the subject of alimony.

With this rule in mind we now turn to a brief analysis of the Rhode Island law concerning alimony. This court has consistently held that alimony is considered a rehabilitative tool designed to provide economic support for a dependent spouse and is based upon need. *Fricke v. Fricke,*

491 A.2d 990 (R.I. 1985); *Murphy v. Murphy,* 471 A.2d 619 (R.I. 1984); *D'Agostino v. D'Agostino,* 463 A.2d 200 (R.I. 1983). The power of the Family Court to grant alimony is statutory, and any action taken by the court must be expressly conferred by the statute governing the establishment and jurisdiction of that court. *Paolino v. Paolino,* 420 A.2d 830 (R.I. 1980); *Christensen v. Christensen,* 121 R.I. 272, 397 A.2d 900 (1979); *Britt v. Britt,* 119 R.I. 791, 383 A.2d 592 (1978); *Fox v. Fox,* 115 R.I. 593, 350 A.2d 602 (1976). *See* G.L. 1956 (1981 Reenactment) § 15-5-16, as amended by P.L. 1981, ch. 320, § 1. Thus a necessary incident to the court's power to grant alimony is the power to modify it, as is set forth in § 15-5-16, which reads in pertinent part:

> "After a decree for alimony has entered, the court may from time to time upon the petition of either party, review and alter its decree relative to the amount of such alimony and the payment thereof, and make any decree relative thereto *which it might have made in the original suit.* Said decree may be made retroactive in the court's discretion to the date that the court finds that a *substantial change in circumstances* has occurred; provided however, the court shall set forth in its decision the specific findings of fact which show a substantial change in circumstances and upon which findings of facts the court has decided to make the decree retroactive. Nothing herein provided shall affect the power of the court as hereafter provided by law to alter, amend, or annul any order of alimony heretofore entered." (Emphasis added.)

Under these statutory parameters the court has the power to modify any judgment relative thereto that it might have made in the original suit. However, once a judgment awarding alimony has been entered, a party must prove by a preponderance of the evidence that there has been a "substantial change in circumstances" in order for the court to modify its judgment. *Hopkins v. Hopkins,* 487 A.2d 500, 504 (R.I. 1985); *Murphy v. Murphy,* 471 A.2d 619, 623 (R.I. 1984); *Bocchi-*

*no v. Bocchino*, 464 A.2d 715, 717–18 (R.I. 1983). Here plaintiff asserts that even if the trial judge acknowledged that the agreement merged and subsequently that the rules governing alimony applied, she nonetheless committed error per se. We agree with plaintiff's contention that equating a finding of "cohabitation" with a "substantial change in circumstances" is clearly beyond the Family Court's statutory authority.

The Massachusetts Supreme Judicial Court has recently addressed the issue of a cohabitation restriction within a marital-settlement agreement as it related to the jurisdiction of that state's Probate and Family Court.[1] That court stated that:

"the statutory authority of a court to award alimony continues to be grounded in the recipient spouse's need for support and the supporting spouse's ability to pay. A court may not limit alimony for reasons unrelated to its statutory base." *Gottsegen v. Gottsegen*, 397 Mass. 617, 624, 492 N.E.2d 1133, 1138 (1986); *see also Levine v. Levine*, 394 Mass. 749, 477 N.E.2d 402 (1985).

We find this analysis to be directly on point. Similarly this court holds that the Rhode Island statute requires a substantial change in circumstances, not a finding of cohabitation. We further agree with that court when it stated:

"Nor may a judge, in formulating the divorce judgment, assume that cohabitation of the type described here would have any effect on the recipient spouse's economic circumstances and the need for alimony. The extent of actual economic dependency, not one's conduct as a cohabitant, must determine the duration of support as well as its amount.'" *Gottsegen*, 397 Mass. at 625, 492 N.E.2d at 1138 (quoting *Gayet v. Gayet*, 92 N.J. 149, 154, 456 A.2d 102, 104 (1983)).

Thus if upon remand the defendant proves as a result of cohabitation that the plaintiff's economic circumstances have substantially changed, then the Family Court may modify alimony. *Fisk v. Fisk*, 477 A.2d 956, 958 (R.I. 1984). Such a modification cannot be determined solely by a finding of cohabitation, as this would not only be beyond the scope of the Family Court's jurisdiction but also would be against public policy. A divorced spouse has no right to exercise control over a former spouse's right of association via court-sanctioned alimony provisions. *See Mitchell v. Mitchell*, 418 A.2d 1140, 1143 (Me. 1980). However, this holding does not preclude the contracting parties from including such a restriction in a separation agreement that is intended to survive the entry of the divorce judgment. *See Bell v. Bell*, 393 Mass. 20, 468 N.E.2d 859 (1984), *cert. denied*, 470 U.S. 1027, 105 S. Ct. 1392, 84 L. Ed. 2d 782 (1985).

For the reasons heretofore stated, the petition for certiorari is granted, and the papers in this case are remanded to the Family Court for further proceedings consistent with this opinion.

---

1. *See* Mass. Gen. Laws Ann. ch. 208, § 37 (West 1987), which is virtually identical to the Rhode Island Family Court statute regarding alimony, G.L. 1956 (1981 Reenactment) § 15–5–16, as amended by P.L. 1981, ch. 320, § 1.