Susan W. **ADAM**

v.

Warren H. **ADAM.**

No. 92–218–M.P.

Supreme Court of Rhode Island.

May 26, 1993.

Jerry McIntyre, Edwards & Angell, Newport, for plaintiff.

William F. Holt, Kirshenbaum & Kirshenbaum, Cranston, for defendant.

## OPINION

SHEA, Justice.

This matter comes before the court pursuant to the petition of the defendant, Warren H. Adam, for a writ of certiorari to review an order of the Family Court. In this action brought by his former wife, the Family Court ruled the defendant in contempt of an order and again ordered him to pay one-half of his children's educational and dental bills and to pay child support that had accrued since 1989. In their property settlement agreement, which was merged into the final divorce decree, the defendant and his former wife had agreed that the defendant would contribute toward the education expenses of his children. He now asserts, however, that the plaintiff, Susan W. Adam, waited too long to bring this action and is therefore barred by the doctrine of laches from attempting to collect any payment. The defendant also argues that the trial justice improperly assessed his ability to contribute financially to their education. Finally he argues that

the Family Court committed clear error by ordering him to pay any of the children's expenses incurred after they had reached the age of eighteen. We grant the petition in part and deny in part.

The plaintiff and defendant were married in 1968. Two children were born of that marriage, Elizabeth in 1969 and Sarah in 1971. The parties were later divorced by final decree that was entered on July 10, 1978. As a part of the final divorce, the parties entered into a property-settlement agreement. That agreement was ultimately incorporated by reference and merged into the final divorce decree.

> The property agreement provided in part: "Husband shall pay towards the cost of the education of the minor children, including but not limited to room, board, tuition and fees as much as he is financially able until an emancipation event occurs. If there is disagreement as to the financial ability of the husband, the matter shall be referred to a court of competent jurisdiction for determination, and said determination shall be final and binding."

The agreement also defined an "emancipation event" as, among other things, the attainment of the age of twenty-one years or the completion of four years of college. The agreement also provided that should the child be enrolled in college beyond her twenty-first birthday, the emancipation of that child would be deferred until she completed her studies. In no case, however, would emancipation be delayed beyond the child's twenty-third birthday. The agreement also provided that defendant would pay $275 per month in child support for each child until the child became emancipated.

After the parties were divorced, plaintiff moved to Boston and enrolled both children in the Boston public school system. They remained there for only a short time. The plaintiff removed Elizabeth first, and Sarah one year later, because of what she felt was the chaotic nature of the school system. Both girls completed their secondary education at the Windsor School, a private school in the Boston area. When plaintiff did discuss her decision to move the girls to a private school with defendant he did not agree with the decision and refused to share the expense. The total cost to plaintiff of educating both Elizabeth and Sarah at the Windsor School, including interest on loans, was $103,401.10.

In addition Elizabeth attended the University of Virginia and Harvard College for a combined cost of $41,350.56. At the time of the Family Court hearing Sarah was attending Trinity College, where her total expenses to date had been $44,689.97.

It is uncontradicted that defendant has not contributed anything toward offsetting any of these expenses. He also ceased to pay child support as of July 1989. His final payment was for obligations incurred through January 1989. Finally, he was supposed to contribute one half of the dental expenses plaintiff incurred for the children's dental work, but he had not done so.

On July 17, 1991, plaintiff filed a motion to adjudge defendant in contempt and to obtain an order for him to pay the child support that was in arrears from January 1989 and one half of the dental bills and to contribute to the children's educational expenses for both the Windsor School and college. By decision filed on November 27, 1991, the Family Court found defendant to be in contempt and ordered him to pay back child support totaling $16,775 and to pay one half of the dental expenses amounting to $1,701.50. The court also ordered defendant to pay half of all the educational expenses that plaintiff had incurred for the Windsor School and college.

In reaching his decision, the Family Court judge found that defendant had been earning between $60,000 and $70,000 per year when he retired from the Navy in 1986. Subsequently his Navy pension gave him an annual income of $32,000. The defendant testified that he had diligently sought employment since his retirement but had been unable to find a suitable job. The defendant had graduated from Harvard Law School and had received an advanced degree in international law from the University of Virginia Law School. He was also a licensed pilot.

Despite defendant's assertions, the Family Court was not convinced that he had utilized his best efforts to secure employment. Although the court did not seek to punish defendant for his retirement, the court found that he should not be excused from his financial obligations when he had the present ability to earn additional income.

The court also found that plaintiff's decision to remove Elizabeth and Sarah from public school and to place them in the Windsor School was not unreasonable in the circumstances at the time. After reviewing the parties' agreement, the court found no ambiguity in the language and held that the agreement included costs incurred in educating the children in secondary school. Having made these findings, the court determined that defendant should be required to reimburse plaintiff for half of all of the educational expenses.

## I

The defendant first argues that plaintiff's action should have been barred by the doctrine of laches. He points out that eleven years had elapsed between the time plaintiff first enrolled Elizabeth at the Windsor School and the time she brought the action in Family Court. During that period defendant had retired from the Navy and purchased an undeveloped parcel of land in Alabama. He contends that he had relied on the state of his income and expenses in making decisions to take these steps, and that as a result plaintiff should now be barred from pressing her claim against him.

Laches is an equitable defense that involves not only delay but also a party's detrimental reliance on the status quo. *Grissom v. Pawtucket Trust Co.*, 559 A.2d 1065 (R.I.1989).

"Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities and other causes, but when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief." *Chase v. Chase*, 20 R.I. 202, 203–04, 37 A. 804, 805 (1897).

To sustain a defense of laches, defendant must show more than that plaintiff delayed her claim for eleven years. Mere delay alone is not enough, the delay must be unreasonable. In this case plaintiff had an adequate excuse for delaying her claim. She testified at the hearing that she was spending her available funds on tuition and could not afford to retain an attorney.

In addition defendant has failed to show prejudice. Although defendant retired from the Navy, he did so with the expectation of finding suitable civilian employment. His retirement would not then have constituted a material change in his economic circumstances. However, as the trial justice found, defendant had not utilized his best efforts to find such employment. The defendant's lack of diligence shall not now be rewarded by a finding that plaintiff's delay worked to his detriment. Therefore, because plaintiff's delay was excusable and defendant was not prejudiced, the defense of laches will not prevail.

## II

The defendant next argues that the trial justice erred in finding that he had the ability to contribute 50 percent of the total cost of educating Sarah and Elizabeth. The defendant contends that, because his income was substantially reduced upon his retirement from the Navy in 1986, his obligation to contribute to the education of his daughters should have ceased at that point.

The plaintiff argues, alternatively, that the judge properly assessed defendant's

ability to contribute. She urges us to hold that the trial justice was correct in finding that defendant had the ability to earn substantially more than he was earning at the time of the hearing.

The trial justice held that "defendant ought not to be excused from his obligations when he has the ability and means to earn income in addition to his retirement pay." In reaching this decision, the trial justice found that "[n]otwithstanding the defendant's testimony, the court is not convinced that he has utilized his best efforts over the past four years to secure gainful employment." The court noted defendant's impressive academic credentials and his work experience in making these findings. The trial justice therefore ordered defendant to reimburse plaintiff for one-half of the educational expenses that she had incurred to date.

This court has previously held that a trial court can consider many factors in setting support payments. These factors include the father's capital assets even if his earning capacity would not support the payments. *Pansey v. Pansey*, 115 R.I. 97, 340 A.2d 120 (1975). We have also held that in a situation in which a party deliberately reduces his income, the court can determine support payments on the basis of his potential earning capacity. *Brierly v. Brierly*, 431 A.2d 410 (R.I.1981). These factors should also be considered in a case such as this one wherein the parties have agreed to allow the court to determine the percentage of their contributions to the education of their child in the event that they cannot agree.

■ The court's findings that defendant had not utilized his best efforts to secure employment were not clearly wrong. Although defendant may not have retired from the Navy specifically to reduce his income, his lack of diligence in securing employment amounts to virtually the same situation. Therefore, the trial justice was justified in fixing the percentage of defendant's contribution based on his earning potential as opposed to his actual earnings at the time of the hearing. Additionally defendant owned an undeveloped parcel of

land in Alabama. Our ruling in *Pansey* allows the trial court to consider his equity in land when fixing the total amount he should contribute to the cost of educating Sarah and Elizabeth.

Therefore, we decline to overturn the trial justice's decision that defendant should pay 50 percent of his daughters' educational expenses.

### III

■ Having determined that the Family Court properly found that defendant has the ability to pay 50 percent of the cost of his daughters' education, we now reach the main issue in this appeal, namely, whether defendant can be required to contribute to the support and education of the children once they have attained the age of majority.

The defendant argues that the property-settlement agreement was ultimately merged into the final divorce decree and as a result ceased to exist as a separate entity. He points to our rulings in *Goldman v. Goldman*, 543 A.2d 1304 (R.I.1988), and *Ramsbottom v. Ramsbottom*, 542 A.2d 1098 (R.I.1988), to support his contention that plaintiff must look to the jurisdictional authority of the Family Court for support of any order regarding defendant's obligation to share in the educational expenses of the children. General Laws 1956 (1988 Reenactment) § 15–5–16.2(b) grants to the Family Court the authority to "order child support and education costs for children attending high school at the time of their eighteenth birthday and for ninety (90) days after graduation, but in no case beyond their nineteenth birthday." The defendant argues that he consequently cannot be ordered to pay child support and/or to share educational expenses for his daughters beyond their high school graduations.

The plaintiff seeks to distinguish *Ramsbottom* by the fact that she did not ask the court to exceed its statutory authority by modifying the agreement but instead merely requested that the court enforce the previous agreement. She argues that the

effect of the merger of the settlement agreement into the final divorce decree was to foreclose a contract action for enforcement and that although the parties may now only request a court order to enforce the agreement, the court may, however, enforce an agreement that it may not be able to create by judicial decree. The plaintiff cites this court's ruling in *Bouchard v. Bouchard*, 119 R.I. 656, 382 A.2d 810 (1978), in support of her argument that although a divorced husband's support obligation normally ends when a child reaches the age of majority, the parties can stipulate otherwise.

Our ruling in *Ramsbottom* is dispositive of this issue. In that case the husband and the wife had executed, upon their divorce, a marital-settlement agreement detailing property division and alimony payments. That agreement was later merged into the final divorce decree. Thereafter the husband filed a complaint against his former wife, alleging that she had violated the terms of the separation agreement by cohabiting with an unrelated male. We held that the merger of a settlement agreement into a final divorce decree "results in the contract's loss of its separate identity." *Ramsbottom*, 542 A.2d at 1099. "On the occurrence of merger, the contract between the parties no longer exists, and in its stead there is a judgment of divorce that outlines the rights, privileges, and obligations of the respective parties." *Id.* at 1100.

The same principle applies in the present case. When the final decree of divorce entered, the settlement agreement between the parties ceased to exist. Therefore, the Family Court's ability to compel defendant is limited by the statutory authority that the Legislature granted to the court.

 The Family Court is a court of limited jurisdiction, and its authority to act in a given situation, or to allow a specific type of relief, must be granted by statute. *State v. Mastracchio*, 546 A.2d 165 (R.I. 1988); *State v. Kenney*, 523 A.2d 853 (R.I. 1987); *In re Debra*, 445 A.2d 577 (R.I. 1982). Section 15-5-16.2(b) confers jurisdiction on the court to order payment of child support and education costs for children until they reach age eighteen, or until age nineteen in some limited circumstances. The Legislature has not given the Family Court the authority to order a party to pay child support beyond that. Therefore, the order to the defendant to pay one-half of the educational costs of his children is valid only for those costs that were incurred through ninety days after their high school graduations or their eighteenth birthdays, whichever came later.

For these reasons, the petition for the writ of certiorari is granted in part and denied in part. The order insofar as it required the payment of educational expenses and child support beyond the limits of § 15-5-16.2(b) is quashed, the order is otherwise affirmed, and the papers of the case are remanded to the Family Court with our decision endorsed thereon and for entry of a new order consistent with this opinion.