[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTIONS TO MODIFY AND CLARIFY(NO. 103), FOR CONTEMPT (NO. 104) AND FOR COUNSEL FEES (NO. 106) ANDDEFENDANT'S MOTIONS FOR CONTEMPT (NO. 109) AND FOR COUNSEL FEES (NO. 110)
The plaintiff former wife has moved for modification and/or clarification[1] of an alimony award in a Rhode Island judgment, for a finding of contempt of certain other financial orders and for counsel fees. The defendant former husband has also moved for a contempt finding of a financial order and for counsel fees. At the hearing, the court took testimony and a large number of documentary materials were introduced into evidence. Both parties were represented by counsel. For the reasons stated below, the plaintiff's motion for contempt is CT Page 11339 granted in part and denied in part; the defendant's motions for contempt and counsel fees are denied. The plaintiff's motion for modification is denied. The motion for clarification is granted, and relief is ordered, together with counsel fees, as hereinafter set forth.
 I
The procedural backdrop and facts found follow. Additional facts will be found in the consideration of each issue raised by the several motions. The parties' marriage was dissolved by a Rhode Island decree made permanent on June 5, 1987. The decree was founded on a property settlement agreement signed by the parties. The settlement agreement was merged into the decree (hereinafter decree). The plaintiff was then represented by counsel; the defendant appeared pro se.
The plaintiff duly filed the decree in this court, and the parties stipulated on the record that their Rhode Island decree fully qualifies as a foreign matrimonial judgment within the meaning of General Statutes §§ 46b-70 et seq. Section 46b-71(b) states in pertinent part:
 ". . . A foreign matrimonial judgment so filed shall have the same effect and may be enforced or satisfied in the same manner as any like judgment of a court of this state and is subject to the same procedures for modifying, altering, amending, vacating, setting aside, staying or suspending said judgment as a judgment of a court of this state; provided, in modifying, altering, amending, setting aside, vacating, staying or suspending any such foreign matrimonial judgment in this state the substantive law of the foreign jurisdiction shall be controlling." See also Colby v. Colby, 33 Conn. App. 417, 421 (1994).
As the parties' decree satisfies the requirements of §46b-70, the court has jurisdiction of the parties' motions and they are properly before the court.
II CT Page 11340
The portions of the agreement merged[2] into the decree which are relevant to the claims made by the parties in the motions for modification and/or clarification and for contempt are as follows:
 10. PURPOSES. Husband and Wife intend and it is the purpose of this agreement to make a complete and final settlement of all claims that Wife may have against Husband for alimony, support and maintenance, and to provide fairly and adequately for her support and maintenance, and to provide for the necessary funding for their daughter, Carolyn's, future education.
11. DEBTS OF THE PARTIES. . . . .
Husband shall pay the following:
 ii. fifty (50%) percent of all outstanding educational loans of the parties' children.
 iii. fifty (50%) percent of Carolyn's future educational expenses through the year 1991.
Wife agrees to pay:
 i. fifty (50%) percent of Carolyn's future educational expenses through the year 1991.
 ii. fifty (50%) percent of all other outstanding educational loans of the parties' children. . . .
 12. WAIVER OF ALIMONY. In consideration of the equitable division of real and personal property heretofore made and hereinafter agreed upon by the parties made by the Husband and Wife, and as the Husband and the Wife represent that they both are employed and are capable of supporting themselves, the Husband and the Wife agree to waive CT Page 11341 alimony permanently. The Husband and the Wife completely understand that in waiving alimony permanently they are forever waiving alimony permanently, they are forever waiving their rights to seek and receive alimony and support from each other.
 In lieu of alimony, Husband shall pay to Wife as and for her necessary support and maintenance, fifty (50%) percent of his gross weekly salary, at his primary place of employment, after deductions for all income and other taxes, management club deductions, contribution deductions, Stock Savings and Investment Plan contribution deductions, and optional life insurance deductions.
 Said payments shall be made bi-weekly and shall continue until either the death of either party or the retirement of Husband from General Dynamics. The remarriage of Husband or Wife shall in no way void, nullify or terminate this section.
 Wife accepts the payments specified in and made under this section in full satisfaction of all her right, claim and demand against Husband for support, maintenance and alimony. Wife further stipulates and agrees that the allowance for her support and maintenance is reasonable and just under the circumstances of the parties and her needs and requirements.
 The parties further agree that all payments made under this section shall be treated as alimony for Husband and taxable income for Wife for purposes of the federal income tax.
 13. LIFE INSURANCE. The parties agree that they will continue to keep in full force and timely pay the premiums on all current life insurance policies where the other is the named beneficiary and to retain each other as beneficiaries on said policies. CT Page 11342
 14. HEALTH AND DENTAL INSURANCE. Husband agrees to continue to provide Wife with health and dental insurance until such time as circumstances require a revision of this paragraph, for example, upon Husband's remarriage, retirement, and/or resignation.
 15. RETIREMENT FUND AND PENSION DIVISION.
Whereas Husband is employed by General Dynamics, hereinafter referred to as "company", and is presently fully vested in company's Retirement Plan, Stock Savings and Investment Plan, Long Term Disability Plan, and Employee Stock Ownership Plan, Husband agrees to maintain such plans until his retirement or separation from company. Further, Husband agrees to continue to make his present salary percentage contributions (as of July 25, 1985) to such plans as permitted by company so long as Husband is employed by company.
. . . .
 Husband agrees to retain Wife as the beneficiary of company's Pre-Retirement Surviving Spouse's Option and all other spousal benefits permitted.
 Should Husband or Wife remarry, Husband shall purchase insurance sufficient to provide Wife with those benefits under the aforementioned plans which may be lost, transferred, lapsed, or disqualified upon remarriage.
 Upon Husband's retirement, termination or separation from company, Husband shall have the absolute right to select the manner of collecting all the retirement and pension benefits, either monthly or lump sum payments. Husband agrees to pay Wife fifty (50%) percent of all of said accrued benefits either monthly or in a lump sum CT Page 11343 payment, according to his previously mentioned selection.
The parties operated under these provisions in the decree until February 1, 1991, when the husband elected to, and did retire at age 55, effective March 1, 1991. Until March 1, 1991, he duly paid her 50 percent of his gross weekly salary, after deductions, as required by the decree.
After his retirement, and to the time of this hearing, he paid her $11,880 per year, being 50 percent of his gross monthly retirement benefit pursuant to the decree. This is a substantial reduction of the amount he paid to her annually when employed, which ranged from $19,760 to a high of $29,544 in 1990. He then pursued and completed a course of study toward a master's degree during which period he had no earnings. He began teaching elementary school full time in September, 1992, and has remarried. He now works as a program manager earning about $60,000 per year under a grant which expires in late 1996. He did not pay the plaintiff 50 percent of his net income from his teaching or program manager salaries.
The husband did not designate the plaintiff former wife as survivor beneficiary of his General Dynamics retirement plan, removed her as beneficiary from his job-related life insurance policy and her health and dental insurance coverage was effectively terminated when the parties' divorce was made final. However, the health insurance carrier continued to pay benefits on behalf of the plaintiff, until it became aware of the parties' divorce. Neither party was then aware of the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, (COBRA) or any applicable Rhode Island law providing continuation of such coverage. Neither party brought any action in the Rhode Island courts for enforcement, modification or clarification of their decree either at the time of the husband's retirement or thereafter. The parties relocated to Connecticut, and these motions ensued.
 III Plaintiff's Motion to Modify and Clarify
(A)
The plaintiff claims in her motion that at the time of the CT Page 11344 decree she was fully employed and is now employed only part time. She further claims she now has no employment-related health insurance benefits available. She also asserts that the intention of the parties at the time of the decree was that the husband's obligation to pay her 50 percent of his gross weekly salary would continue until his `normal' retirement, presumably at age 65. She finally asserts that these factors constitute a substantial change of circumstances justifying modification.
The husband essentially claims that the required payments of 50 percent of his net salary income were not in fact alimony. He further argues that even if they can be deemed alimony, they terminated automatically upon his retirement, hence, there is no ongoing alimony award to modify. He finally claims that the decree was silent on the time of his retirement, and that the parties indeed contemplated his early retirement.
The language used by the parties in their agreement which merged into the decree expresses an intent to waive alimony. The Rhode Island dissolution court, however, specifically found that the stream of payments from the defendant to the wife (50 percent of his salary after deductions) was in fact alimony. The defendant agreed. The payments were deductible by the defendant and taxable as income to the plaintiff, and the parties treated the payments in that manner. They also terminated upon the death of either party. The decree further described the payments as an allowance for her support and maintenance.
This court is bound by the findings of the dissolution court that the payments were in fact alimony, no matter what they were called. The findings of that court stand unmodified, and this court finds that the stream of 50 percent of the defendant's weekly salary was in fact alimony, and as such, modifiable under Rhode Island law. The plaintiff's waiver of alimony in the agreement is of no further force and effect, as it was superseded by the court's decree, which `controls the rights, privileges and obligations of the respective parties'. See Goldman v. Goldman, supra, 543 A.2d 1304. It is significant to note that the dissolution court's decree specifies that the defendant waived alimony permanently, while it made no such finding with respect to the plaintiff.
Section 15-5-16 of the General Laws of Rhode Island, 1956, in effect at the time of the decree, provided in relevant part, as follows: CT Page 11345
 (a) In granting any petition for divorce, divorce from bed and board, or relief without the commencement of divorce proceedings, the family court may order either of the parties to pay alimony . . . to the other. In determining the amount of alimony . . ., if any, to be paid, the court after hearing the witnesses, if any, of each party, shall consider: the length of the marriage; the conduct of the parties during the marriage; the health, age, station, occupation, amount and source of income, vocational skills, and employability of the parties; and the state and the liabilities and needs of each of the parties. For the purposes of this section, alimony shall be construed as payments for the support or maintenance of either the husband or the wife. After a decree for alimony has entered, the court may from time to time upon the petition of either party review and alter its decree relative to the amount of the alimony and the payment thereof, and may make any decree relative thereto which it might have made in the original suit. The decree may be made retroactive in the court's discretion to the date that the court finds that a substantial change in circumstances has occurred; provided however, the court shall set forth in its decision the specific findings of fact which show a substantial change in circumstances and upon which findings of facts the court has decided to make the decree retroactive. Nothing herein provided shall affect the power of the court as heretoafter provided by law to alter, amend, or annul any order of alimony heretofore entered. Upon the remarriage of the spouse who is receiving alimony, the obligation to pay alimony shall automatically terminate at once.
Rhode Island's alimony statute has been amended on several occasions since the decree. The amendments now basically require CT Page 11346 a court, in the determination of an alimony award, to also consider a number of additional factors, including: the supported spouse's ability to acquire education or training to obtain appropriate employment and the time and expense to do so; the parties' standard of living during the marriage; the opportunity of each spouse for future acquisition of capital assets and income; the ability to pay of the supporting spouse; and, any other factor which the court expressly finds to be just and proper.
The statute, as amended, also continues to provide: "Alimony is designed to provide support for a spouse for a reasonable length of time to enable the recipient to become financially independent and self sufficient."
The defendant has pointed to no Rhode Island case or authority that holds that a court lacks jurisdiction to modify an alimony order that may have lapsed or terminated upon retirement. Nor, has the defendant pointed to any statute of limitation or repose prohibiting a motion or other proceeding for modification of an alimony order in a case such as presented here.
Indeed, the statute itself provides that a "decree may be made retroactive in the court's discretion to the date that the court finds that a substantial change in circumstances has occurred. . . .," and that "Nothing herein provided shall affect the power of the court as heretoafter provided by law to alter, amend, or annul any order of alimony heretofore entered." General Laws of Rhode Island, § 15-5-16(C) (1985 Reenactment).
Certainly, there can be no doubt that the court would have had jurisdiction to consider a motion to modify alimony filed before or at the time of the defendant's early retirement. In this case, such a proceeding in all probability, would have been of no avail, as the defendant upon his retirement entered graduate school and was unemployed until September, 1992.
The defendant further asserts that under the law of Rhode Island, the plaintiff is barred from pursuing her quest for an alimony modification by the doctrine of laches. Laches consists of an unexcusable or unreasonable delay which prejudices the other party. This claim of the defendant is not persuasive. The plaintiff's delay of three years was not unreasonable, because as previously pointed out, the defendant had no earnings for over 1 1/2 years while he was a student pursuing his certificate to CT Page 11347 teach. Moreover, the defendant has not shown how he was prejudiced by the delay.
"A necessary incident to the court's power to grant alimony is the power to modify it. The court has the power to modify any judgment relative thereto that it might have made in the original suit." See Ramsbottom v. Ramsbottom, 542 A.2d 1098 (R.I. 1988).
In the construction of a merged decree, the court is bound by the actual words in the underlying agreement. "When the terms are found to be clear and unambiguous, the task of judicial construction is at an end. The contract terms must then be applied and the parties are bound by them." Aetna Casualty Surety Co. v. Graziano, 587 A.2d 916, 917 (R.I. 1991). In determining whether a contract is clear and unambiguous, [the court views] the agreement in its entirety and give to its language its "plain, ordinary and usual meaning". Amica MutualInsurance Co. v. Streicker, 583 A.2d 550, 552 (R.I. 1990). A court shall conclude that a contract is ambiguous if it is "reasonably susceptible of different constructions". WestinghouseBroadcasting Co. v. Dial Media, Inc., 410 A.2d 986, 991 (R.I. 1980).
 When the contested provision of a contract or agreement is capable of two separate constructions, this court has previously stated that it should adopt that construction which is most equitable and which will not give to one party an unconscionable advantage over the other; and where the meaning is doubtful a construction which will entail a forfeiture should be avoided, especially where there is nothing in the language used which expressly requires such result. (Internal quotation marks omitted.) Vickers Antone v. Vickers, supra, 610 A.2d 123 (quoting Massasoit Housing Corp. v. Town of North Kingstown, 65 A.2d 38, 40 (R.I. 1949).
With these principles of construction in mind, I find that it is unnecessary for this court to determine whether the plaintiff's delay until May 11, 1994, when she filed her motion to modify alimony, deprived the court of jurisdiction to consider the issue. In the view I take of the case, I conclude that the CT Page 11348 stream of payments that the plaintiff presently receives, that is, 50 percent of the defendant's monthly retirement benefit, constitutes alimony.
I reach this conclusion because the parties have treated it as such, while the decree is ambiguous on the matter. The retirement payments are first paid to the defendant from his retirement plan, and then the defendant remits the 50 percent portion to the plaintiff. The defendant deducts the payments on his income tax returns as alimony; the plaintiff declares them on her tax return as alimony income. The payments terminate automatically upon the death of either party. This is so since the defendant did not elect the survivor beneficiary option in favor of the plaintiff.
The language of the paragraph, although entitled "Retirement Fund and Pension Division", is not to the contrary. Moreover, paragraph 26 of the decree states that: "The titles and subtitles used herein are intended only for the purpose of convenience and are not to be considered a part thereof, nor shall they affect in any way the meaning or construction of the language of this agreement." No present division of the retirement benefit was made at the time of the decree, nor was there an assignment of any interest therein then made to the plaintiff, or thereafter, by Qualified Domestic Relations Order (QDRO), or other appropriate instrument, by the Rhode Island court. Nor was such an interest or property right in the retirement benefit established on the records of the defendant's retirement plan administrator. Nor did it appear that the parties were even aware of QDROs.[3] By the terms of the decree, the husband reserved to himself, ". . . the absolute right to select the manner of collecting all the retirement and pension benefits, either monthly or lump sum payment". The words of the court which entered the original decree when referring to the payments of 50 percent of the husband's net weekly income, and finding them to be alimony, "A rose is a rose no matter what you call it," are similarly applicable here. I conclude that the payments made by the defendant to the wife, from his retirement benefits, have all of the attributes of alimony, and are, in fact alimony, and constitute a continuing order which is subject to modification proceedings.
This conclusion is buttressed by my reading of the decree as a whole, including paragraph 10, which provides, in relevant part: CT Page 11349
 10. PURPOSES. Husband and Wife intend and it is the purpose of this agreement to make a complete and final settlement of all claims that Wife may have against Husband for alimony, support, and maintenance, and to provide fairly and adequately for her support and maintenance . . .
The purpose professed by the parties in their agreement and decree is precisely that of General Laws 15-5-16(C) which I repeat: "For the purposes of this section, alimony shall be construed as payments for the support or maintenance of either the husband or the wife."
In short, the husband's early retirement triggered a reduction in the stream of payments, but did not transform or transfigure them or change their essential characteristics, that is: payments for the wife's support or maintenance, which are taxable income to her and deductible by him, and terminate upon the death of either party.
The wife's claim that the reduction should not have been triggered by the husband's early retirement, as the parties contemplated a `normal' retirement at age 65 is without merit. To the contrary, in the proceedings before the dissolution court, the subject of early retirement was specifically mentioned and was within the contemplation of the parties. The plaintiff was represented by counsel, and neither she nor her attorney contradicted the statements of the defendant relating to his early retirement. There is no language in the decree which excluded `early' retirement from triggering a reduction in his payments, and if the parties actually intended such a result, they could have easily provided for such language.
(B)
Rhode Island law provides for alimony modification in the event of a substantial change in circumstances. Ramsbottom v.Ramsbottom, supra, 542 A.2d 1098 (R.I. 1988); Goldman v. Goldman,543 A.2d 1304 (R.I. 1988).
At the time of the decree in 1987, the wife was fully employed; she earned $12,912 from her employment in 1986;[4]
$14,680 in 1987; and $20,440 in 1988. She has a high school CT Page 11350 diploma and was a homemaker. She moved to Connecticut in 1991, because she could not afford to stay in Rhode Island. She now is 56 years old and has held part-time employment on and off since 1991. She has made some effort to obtain full-time employment and has a modest earning capacity. However, the court is not persuaded that she has made reasonable or diligent efforts to obtain full-time employment, even when considering the realities of her training and skills, the market place and her present age, 56. Accordingly, I find that she does not fully exploit her demonstrated earning capacity.
At the same time, I find that the combination of the husband's early retirement and consequent reduction in payments to the wife when taken together with the minimal annual incomes from employment and unemployment compensation the wife has received from 1991 to the present time, the husband's present income from employment of approximately $60,000 per year, his remarriage to a spouse who is employed and owns the home the couple reside in, under the totality of the circumstances, constitute a substantial change of circumstances.
Having determined that the threshold requirements for the consideration of the modification of an alimony award exist, I now turn to the applicable statutory principles for the determination of an alimony award. They are: the length of the marriage; the conduct of the parties during the marriage; the health, age, status, occupation, amount and source of income, vocational skills, and employability of the parties; and the state and the liabilities and needs of each of the parties. I also considered the extent to which the wife is able to support herself, and insofar as there was evidence pertaining thereto, the subsidiary statutory factors in § 15-5-16(B)(2). I also bear in mind the overarching principle that "Alimony is designed to provide support for a spouse for a reasonable length of time to enable the recipient to become financially independent and self sufficient." § 15-5-16(C).
An examination of the plaintiff's financial affidavit discloses that she resides in a home fully paid for. Her affidavit also discloses that she has investment funds of approximately $89,000, and that her total net weekly income is within $4 of her net weekly expenses.[5]
As can be seen, the plaintiff is not in further need of support, as she has a minimal shortfall between her income and CT Page 11351 expenses.
Therefore, no additional alimony is warranted at this time, and the plaintiff's motion to modify alimony is denied. The plaintiff's motion to clarify is granted as stated herein.
 IV Plaintiff's Motion for Contempt
 A. Retirement Plan Survivor Beneficiary
The defendant did not elect the plaintiff as a survivor beneficiary of his General Dynamics retirement plan benefit. The plaintiff claims that this failure to do so was wilful and in contempt of the court's order. The defendant, on the other hand, asserts inconsistent defenses. He first says that paragraph 15 of the decree only required that he retain the wife as beneficiary of "the company's Pre-Retirement Surviving Spouse's Option, andall other spousal benefits permitted" (emphasis added). He asserts he fully complied with this provision prior to retirement, and that he had no obligation to maintain her as survivor beneficiary after he retired. This argument has absolutely no merit, when the applicable provisions of the decree are read as a whole, including the underlined remainder of the sentence. The first full paragraph of § 15 of the decree relating to retirement provisions states, in part: "Husband agrees to maintain such [retirement] plan until his retirement or separation from company. Further, Husband agrees to continue to make his present salary percentage contributions to such plan as permitted by company so long as Husband is employed by company. . . . Should Husband or Wife remarry, Husband shall purchase insurance sufficient to provide wife with those benefits under the aforementioned plans which may be lost, transferred, lapsed, or disqualified upon remarriage."
The word `maintain' is defined as, `to keep in an existing state; to preserve or retain'. The American Heritage College Dictionary, 3d Ed, 817 (1993). The surviving spouse's option was a benefit in existence at the time the decree was entered, and the defendant was required by the decree to maintain all existing spousal benefits in force except in the case of remarriage.[6]
If the parties wished to provide that the defendant need not elect the survivorship option for the plaintiff upon retirement, the decree could have easily said so. The clear intent of these CT Page 11352 provisions, when read in the light of paragraph 10 of the decree relating to purpose (previously recited in Part III of this memorandum), required the defendant to designate the plaintiff as survivor beneficiary so as to provide a source of income to her for her support until her death in the event the defendant predeceased her.
Even if, as the defendant claims, he may have been entitled by the decree to not elect the plaintiff as survivor beneficiary, this assertion is belied by the actions taken by him which supports his second argument.
The defendant's second argument is that he and the plaintiff discussed the survivorship beneficiary option, and that the parties agreed to a `straight life' option (on his life only), rather than the surviving option, because it would provide them with higher monthly payments immediately, which they accepted and equally shared.
The agreement upon which the decree was founded requires that any modification be in writing. No evidence of such a writing was introduced. Even if such a modification were in writing, it could not operate to modify the decree, because as pointed out earlier, an agreement merged into a decree has no further independent validity. See Note 2, supra; Goldman v. Goldman, supra, 543 A.2d 1394. The Rhode Island courts have consistently held that court orders continue to be in full force and effect until modified by subsequent orders of the court, as they can only be modified by the court. See, e.g. Healy v. Healy, 591 A.2d 1216 (R.I. 1991);Calcagno v. Calcagno, 391 A.2d 79 (R.I. 1978).
I conclude, therefore, that the defendant has violated the decree by failing to designate the plaintiff as the survivor beneficiary of his retirement payments. However, a violation of a court order, in and of itself, may not be a contempt. Here, the husband was operating under a belief, not in bad faith, that by virtue of his agreement with the plaintiff for higher present benefits, he was no longer obligated to designate her on the plan. In Rhode Island, as in Connecticut, such a belief constitutes a defense to a charge of contempt. See Shontingv. Shonting, 391 A.2d 79 (R.I. 1978); Jenks v. Jenks,39 Conn. App. 139, 143 (1993), and cases therein cited.
There has been no showing that it is possible for the defendant to now elect the plaintiff as a survivor beneficiary. CT Page 11353 The plaintiff has purchased a life insurance policy on the defendant's life in the amount of $150,000, for a term of ten years, at a cost of $1,000 per year. This policy would substantially compensate her for the loss of her alimony payments if he predeceased her.
In a contempt proceeding, even in the absence of a finding of contempt, a trial court has broad discretion to make whole a party who has suffered as a result of another party's failure to comply with a court order. See Clement v. Clement, 34 Conn. App. 641
(1994). General Statutes § 46b-71(b) provides that "A foreign matrimonial judgment . . . shall have the same effect and may be enforced or satisfied in the same manner as any like judgment of a court of this state. . . .", hence, this court, in the exercise of its equitable power, has the authority to protect the integrity of the decree and fulfill its intent, by ordering the defendant to reimburse the plaintiff for the life insurance premiums she now expends.
As the plaintiff, however, has not shown precisely when she put the $150,000 life insurance policy in force, the court orders the defendant to pay to her the sum of $19.23 per week, to cover the costs of said policy, so long as the defendant is obligated to pay to the wife the alimony order of 50 percent of his retirement benefits. This order shall be retroactive to the date this hearing commenced, May 26, 1995. Any arrearage resulting from retroactivity shall be paid in full by the defendant within thirty (30) days hereof. These payments shall not be deemed alimony and shall not be deductible by the husband or taxable income to the wife.
B. Life Insurance
The defendant changed the beneficiary on the life insurance available to him through his employment from the plaintiff to the parties' three children. That life insurance has face value proceeds in the amount of $41,250, and remains in full force and effect. Paragraph 13 of the decree provides that "The parties agree that they will continue to keep in full force and timely pay the premiums on all current life insurance policies where the other is the named beneficiary and to retain each other on said policies." The decree contains no provisions for the modification or termination of this obligation.
The defendant seeks to justify his noncompliance with this CT Page 11354 provision of the decree by asserting that the plaintiff cancelled the insurance policy on her life on which he was named beneficiary. This argument is without merit. There is no motion before me charging the plaintiff with contempt for her noncompliance. The defendant points to no provision in the decree making the performance of the plaintiff's obligation a condition precedent to the performance of his obligation.
Accordingly, I find the defendant in contempt of this provision of the decree. He is ordered to forthwith designate the plaintiff as irrevocable beneficiary of said policy and execute and deliver an authorization to her so she may, from time to time, obtain information as to the status of said policy.
C. Health Insurance
The provision relating to health insurance provides: "Husband agrees to continue to provide Wife with health and dental insurance until such time as circumstances require a revision of this paragraph, for example, upon Husband's remarriage, retirement and/or resignation." The defendant argues that the event of his retirement terminated his obligation under this provision. This court disagrees.
The provision does not say how or by whom, or in what manner his obligation to provide such insurance may be `revised'. The intent appears to indicate that his obligation be revised by mutual consent or agreement. Since the parties could not mutually agree, and the agreement was merged into the decree, this court has jurisdiction to resolve the issue.
As previously noted, the wife's coverage was terminated only after the insurance carrier first learned of the parties' divorce. For a period of time after the divorce, the insurance carrier paid benefits. For some time, the wife was employed and had employment-related health insurance benefits. At times, the husband paid certain medical bills on behalf of the wife. The paragraph in question, when read in a common sense manner, cannot be construed to require automatic termination of his obligation. The parties were unaware of COBRA provisions and applicable Rhode Island law. They were apparently also unaware of the effects of their divorce on the wife's health insurance coverage, and it is obvious that if either party sought revision or modification of this provision at the time they learned that the coverage had terminated, such party could have obtained relief, if warranted CT Page 11355 at the time.
Neither party sought a revision of this provision, and it appears that the parties were unaware for a long time that any of the operative circumstances required a revision of this paragraph. The husband points to testimony by the plaintiff before the dissolution court that she was aware that his remarriage would terminate her health insurance coverage. However, that is not the same as terminating the defendant's obligation to pay or provide for such coverage. The decree plainly requires the continuation of this obligation, and hence, the husband's obligation under this paragraph remains in full force and effect, and he is obligated to pay for or provide such coverage. I do not find him in contempt of this provision, for substantially the same reasons expressed in Part IV A of this opinion.
The plaintiff has purchased a health insurance policy (without dental coverage) with a $1,500 deductible, at a premium cost of $1,700 per year. She also claims she incurred a number of medical bills which she asserts should or would have been paid by health insurance. She further claims that these bills are `in the neighborhood' of $3,000.
Again, no verification or authentication of the expenses was provided; nor, were the bills introduced into evidence; nor was an analysis provided of what benefits health insurance comparable to the defendant's would have paid, were it in force. This claim of the plaintiff is therefore rejected.
The plaintiff did not introduce into evidence the commencement date of the replacement health insurance she put into effect. She testified that the premiums are $1,700 per year, or $32.69[7] per week. The defendant is therefore ordered to reimburse her for such coverage at the rate of $31.10 per week, retroactive to May 26, 1995, until she is eligible for Medicare, or he is no longer obligated to pay alimony, whichever first occurs. Any arrearage resulting from this order shall be paid within thirty (30) days hereof. These payments shall not be deemed alimony, and shall be neither taxable nor deductible to the parties for income tax purposes.
D. Portion of the Retirement Payments Due the Plaintiff
The plaintiff claimed that since the defendant failed and CT Page 11356 refused to give her copies of his retirement benefit statements, she was not receiving her full share, or 50 percent of the defendant's retirement benefit. I find this claim not proven by the credible evidence. I decline to issue a QDRO to secure her benefits, first, because the decree does not provide for the issuance of a QDRO, and second, because I have previously found these payments to be alimony. As such, they may be secured by wage garnishment; the court therefore orders a contingent wage garnishment, which, when and if in effect, shall provide that payments be made directly to the plaintiff.
E. Carolyn's Educational Loans and Expenses and the Parties'Motions for Contempt Re Same
Each party claimed in their respective motions for contempt that the other failed to comply with the decree provisions relating to this matter. Paragraph 11 of the decree essentially provided that they each pay 50 percent of all outstanding educational loans of their children, and that each pay 50 percent of their daughter Carolyn's educational expenses through 1991.
The plaintiff testified in support of her motion that much of her income went to the daughter's college educational expenses, and that Carolyn's loan remains unpaid in part, and that Carolyn is still paying it. On the other hand, the defendant testified that he withdrew funds from his SSIP, and used them to pay the children's outstanding college loans. He further testified that after credits and offsets, there is due him from the plaintiff on account of said loans, the sum of $6,599.29.
The claims of the defendant were not authenticated by appropriate records, such as loan statements or bills. The plaintiff's claim of payments toward the child's college expense was also not verified.
Accordingly, I find neither claim proven, and this ground of each party's motion for contempt fails.
F. Motions for Counsel Fees
The defendant's motion is denied. The plaintiff's motion is granted in part, and the defendant is ordered to pay to her the sum of $1,000 toward her counsel fees within sixty (60) days hereof. In setting this amount, I apportion it as follows: on the contempt finding in Part IV B of this opinion, $250; on the CT Page 11357 violations of the orders discussed in Parts IV A and C of this opinion, $750. In the determination of the amount of such fees, I considered all of the factors in General Statutes § 46b-62
and the defendant's ability to pay.
So ordered.
Teller, J.