[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties to this dissolution action were married in Jamaica on December 2, 1991. Less than three years later, on July 22, 1994, they executed an agreement reciting that they were living separate and apart, intended to continue to live separate and apart and desired to settle "their property rights and other financial questions". The agreement proceeded in a comprehensive fashion to dispose of the parties' joint and individual property, except for an apartment owned by the plaintiff, Mrs. Oliver, in Paris. Both parties waived any right to alimony. Should either party institute an action for divorce, they agreed that they would be bound by this agreement.
The agreement contained an avowal that each party had a full understanding of the other's real estate, other assets and investments, a disclaimer of any fraud, duress or undue influence and an acknowledgment that the agreement was "fair". Finally, and most important for this decision, the parties chose the law of Rhode Island to govern "all matters affecting the interpretation of this Agreement and the rights of the parties". The agreement had been executed in Rhode Island, at the office of an attorney whose firm had previously drafted a will and handled a real estate transaction for Mr. Oliver.
Thereafter, on July 11, 1995, Mrs. Oliver commenced this divorce action. Mr. Oliver, the defendant, set up as a special defense the existence of the agreement described above. The action proceeded through a thicket of pendente lite maneuvers, including a motion by Mr. Oliver for a bifurcation of proceedings so as to determine, first of all, the validity and enforceability of the Rhode Island agreement and its effect on the Connecticut dissolution action. On August 25 and 29, 1997 conducted such a limited hearing.
The Connecticut Supreme Court has laid out a road map for trial courts to follow in resolving choice of law questions in cases such as this, in Elgar v. Elgar, 238 Conn. 839 (1996). In Elgar the Court upheld the trial court's approval of an attorney trial referee's decision that, under Secs. 187 and CT Page 12865 201 of the Restatement(Second) of Conflict of Laws, the parties' express choice of New York law in a prenuptial agreement was valid and enforceable. Id., 845. Section 187 of the Restatement reads as follows:
 The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either
 (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
 (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of Sec. 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
There is, of course, a threshold requirement, as in all contract cases; viz., that the consent of one of the parties to the inclusion of the choice of law provision in the contract not have been obtained by improper means, such as by misrepresentation, duress, or undue influence, or by mistake. See Comment(b) to Sec. 187 of the Restatement (Second).
Mrs. Oliver claims that her consent to this agreement in its entirety, including its choice of law provision, was obtained by improper means, but the evidence does not bear her out. While she testified that she did not understand the terms of the agreement, or even the language in which it was written (Mrs. Oliver is a citizen of France), the testimony of Attorney Arthur Read, II, who met with the parties and drafted the agreement, was to the contrary in almost every particular. First of all, Attorney Read testified that the parties had already agreed to the terms of their separation before meeting with him, and that he acted essentially as a scrivener. The meeting was conducted entirely in English, which Mrs. Oliver spoke fluently CT Page 12866 and understood completely, and in an amicable fashion. After the agreement had been prepared by his office personnel, he went over it in detail, explaining each provision to the parties, and even made a change in it requested by Mrs. Oliver. He explained to her that he was not her attorney, that she had a right to an attorney to review the agreement for her and made suggestions as to how she might obtain one to do so. Mrs. Oliver declined to do so.
I found Attorney Read's testimony to be entirely credible on these points. Therefore, I do not credit Mrs. Oliver's contrary testimony. There was no evidence of any misrepresentation, fraud or undue influence underlying the parties' choice of Rhode Island law or any of the other provisions of their agreement.
Mrs. Oliver claims also that the parties abandoned their 1994 agreement under the rule exemplified in Rowe v. Cormier,189 Conn. 371 (1983). Rowe reasserts the proposition that abandonment of a contract "depends upon the intent of the parties and that the relevant intent is to be inferred `from the attendant circumstances and conduct of the parties'". Id., 373 (citations omitted). I find that the facts of this case do not support a conclusion that the parties' conduct after the agreement demonstrate an intent on the part of both of them to abandon their agreement.
The next question is: Does the chosen state, Rhode Island, have a "substantial relationship to the parties or the transaction"? The answer is that it does. Mr. Oliver maintained a dental practice in that state from 1978 through 1996. Mrs. Oliver had worked in that practice with him for a few years, including on the day the parties saw Attorney Read. Mr. Oliver had voted there for several years, and the parties both had motor vehicle operator licenses issued by Rhode Island. Mr. Oliver had automobiles registered there and had had legal services provided to him by a Rhode Island law firm, including the preparation of his will. He had at least one bank account there. Finally, Rhode Island is the state in which the parties entered into the contract and, pursuant to paragraph 13 of the agreement, was to have been the place of performance, in that the parties agreed that Rhode Island "shall be the sole venue for any divorce action which may at any future date be instituted between the parties". CT Page 12867
Mrs. Oliver points out that Mr. Oliver owned a home in Connecticut in which the parties had lived for periods of time during their marriage, and that Mr. Oliver had filed his tax returns claiming a Connecticut residence. These factors show that the parties had a relationship with Connecticut as well as Rhode Island, but the Restatement does not call for a comparison of ties to respective states much less deny the parties the right to choose the law of one state to govern their contractual relations when they have some ties to another state, as long as the state chosen is one with which they have a "substantial relationship". The evidence is clear that such a relationship existed between the parties and their chosen state in this case.
The final issue in determining the validity and enforceability of the parties' choice of law provision is whether Connecticut has a "materially greater interest" than Rhode Island in the determination of the issues between these parties, for, as the Court in Elgar pointed out, courts faced with a choice of law issue "need consider the relative policy interests only if Connecticut has a materially greater interest than (Rhode Island) in deciding the validity of the antenuptial [in Elgar] agreement". Id., 851.
Simply because the litigation in which the agreement is to be enforced is brought in Connecticut does not give this state a "materially greater interest"; the probate proceedings from which the appeal in Elgar was taken were those of the Westport probate court. Likewise, Elgar demonstrates that, just because the parties have significant contacts with Connecticut as well as the chosen state does not create a "materially greater interest". In view of the numerous contacts with Rhode Island listed earlier in this memorandum, I conclude that Connecticut does not have the "materially greater interest" that would call for comparison of its policy interests with those of Rhode Island.
Having determined that the agreement must be given effect in accordance with Rhode Island law, the question then becomes: What effect does that determination have on the future conduct of this Connecticut dissolution case? Attorney Read, who qualified as an expert witness in family litigation in Rhode Island, based on his background and experience, opined that such an agreement as this would not be reviewed by a Rhode Island Family Court judge to determine whether it was fair and equitable, as would be the case in Connecticut. See Sec. 46b-66, CT Page 12868 C.G.S. Rather, the judge would inquire only into the voluntariness of the parties' agreement and, if satisfied that it was voluntarily entered into, would incorporate it into the divorce judgment. This opinion was based on Attorney Read's own experience in such cases, he testified, and on the statute and case law in Rhode Island concerning premarital agreements. SeePenhallow v. Penhallow, 649 A.2d 1016 (1994).
This conclusion is not free from doubt. In the very case referred to by Attorney Read in his testimony as exemplifying the limited review given to post-marital agreements, Riffenburgv. Riffenburg, 585 A.2d 627 (R.I. 1991), the Rhode Island Supreme Court said, "In paragraph 6 of the judgment, the Family Court justice found the agreement to be fair and equitable. The justice therefore incorporated by reference . . . the agreement into the judgment". Id., 628 (Emphasis added.). Riffenburg was a post judgment matter, concerning the court's power to modify a provision of an agreement incorporated but not merged into the judgment. So, it falls short of being authority for just what is the law in Rhode Island as to the level of scrutiny given to the parties' agreement before it is incorporated into the judgment. Neither party briefed this issue, apparently accepting Attorney Read's opinion as the last word on the matter. See Plaintiff's Memorandum of Law (Sept. 9, 1997), p. 8; Defendant's Supplemental Memorandum on Enforceability (Sept. 11, 1997), p. 7.
My research indicates that the rule in Rhode Island is similar to the statute in Connecticut.
 In divorce proceedings a contract between husband and wife with respect to the amount and the payment of money in lieu of alimony will be recognized and enforced if it appears to the court to be reasonable and fair to the parties . . . .
Reynolds v. Reynolds, 166 A. 686, 688 (R.I. 1933). Accord: Brownv. Brown, 138 A. 179, 181 (R.I. 1927); Masse v. Masse,313 A.2d 642, 645 (1974). See also Frothingham v. Anthony,69 F.2d 506, 508-09 (1st Cir. 1934), for a summary of Rhode Island law on the subject at that time. As recently as 1994 the Rhode Island Supreme Court reiterated the requirement that a property settlement agreement be "reasonable and fair" for it to be approved and enforced by Rhode Island courts. Borden v. Borden,649 A.2d 1028, 1030 (R.I. 1994). CT Page 12869
Therefore, application of Rhode Island law would call for an inquiry by a Connecticut court into whether the agreement freely entered into by the parties in 1994 is "reasonable and fair" at the time of the dissolution of their marriage. Whether that inquiry requires an evidentiary hearing or some other procedure; e.g., an examination of the parties' present financial affidavits, is best left to the court which will make that determination.
Accordingly, the matter is remanded to the Superior Court for the Judicial District of Hartford/New Britain at Hartford for:
1. A determination of whether the necessary jurisdictional factors exist;
2. A determination whether the parties' agreement is reasonable and fair;
3. Entry of a judgment of dissolution and the attendant orders under Secs. 46b-81 and 46b-82, C.G.S.
It should be noted also that Rhode Island law prohibits merger of a property settlement agreement into a divorce judgment unless that was the intention of the parties. Ramsbottomv. Ramsbottom, 542 A.2d 1098, 1100 (R.I. 1988). Paragraph 13 of these parties' agreement specifically provides that the agreement shall not be merged in any divorce judgment.
By the court, Shorthall J.